ALLEN, J.
The final decree allowed to the appellee Hagy certain offsets against the Iwo bonds executed by him to Snead, for the purchase money of the 100 acres of land. The bonds were dated according to the allegations *of the bill, on the 26th and 27th of August 1839; and were assigned, one of them to Greenway & Co. and the other to L. Smith on the 29th of the same month. Suits seem to have been brought by the assignees, immediately after the notes became payable. No defence was made to the action at law, and the office judgments being confirmed, the appellee during the same term of the court, obtained this injunction. It is contended on behalf of Snead’s assignees, that the offsets were legal, and should have been set up at law; that the appellee has shown no good reason for failing to rely upon them at law, and they should not therefore be allowed in equity. The principal offset was the note to Orr in which the appellee Hagy was a surety for Snead. It was past due when Hagy executed his bonds to Snead, but the debt had not then been arranged with Orr. Finding afterwards that he would be compelled to pay the debt, he settled with Orr, and lifted the note on the 10th of January 1840. When his notes were assigned by Snead, Hagy had no claim to a legal offset against the notes. The setoff was merely equitable, and there might be some doubt whether by his own act in adjusting this debt, he could convert that, which at the date of the assignment was an equitable, into a legal offset, of which he could have availed himself at the trial at law. However that may be, it seems to me the case was proper for a court of equity on other grounds.
Hagy had made a contract with Snead for the purchase of a portion of a tract of land held in common by Ragsdale and Snead, and received from them a title bond dated the 3d of August. On the same day Hagy paid to Snead in cash, and transferred paper to him amounting together to 423 dollars 88 cents, and took from Snead his note in which it was stated that the amount thereof was to be discharged in land at 8 dollars per acre. The parties did not know at the time *the quantity of land which the boundaries described in the title bond would contain; and the substance of the arrangement was, that after deducting the price of the land sold when the quantity was ascertained, the residue of the sum of 423 dollars 88 cents was' to be discharged in land at the same price.
Before the quantity described in the title bond was ascertained, Hagy and Snead entered into another contract, whereby the former purchased of Snead the tract of one hundred acres, at 8 dollars per acre, and executed his two bonds for the sum of 776 dollars of the purchase money: how the residue of the purchase money was adjusted, does not appear from the record. Before these bonds became due, difficulties arose as to the title of both tracts sold to Hagy. The land was part of a tract of two hundred and ninety acres, which had theretofore been purchased of Jacob Clark, one of the heirs of Benjamin Clark, by Benjamin Fulcher. In July 1839, Fulcher sold the land to Snead and Ragsdale for 3000 dollars, of which 1000 dollars was paid on the day the contract was completed, and the residue was to be paid in two installments, for which bonds were given; and a deed for the land was executed by Fulcher to Snead and Ragsdale, and placed in the hands of a third person, to be held as an escrow, and delivered upon the payment of the purchase money. Soon after the contract of purchase, there was some understanding or agreement, as appears by the answers of Snead and Ragsdale, by which Snead was to take the land and pay the purchase money; and it was no doubt after this understanding and whilst Snead exercised the control over the whole tract, that he undertook to sell off a portion to Hagy, and to put him in possession of the part so sold to him, although no partition had been made between Snead and Ragsdale. In his answer, Ragsdale avers that before their purchase from Fulcher, Snead had become largely indebted *to him, and that he did not begin to suspect Snead’s solvency, until some short time after the purchase. But that so soon as his fears about the circumstances of Snead were excited, he informed both Snead and Hagy that he would unite in no conveyance or sale of the land until he was made safe as well in reference to the purchase mone3',J as in relation to the individual debt of Snead; and that matters so stood until the 11th of November 1839, when they entered into the contract of that date filed with his answer; which recites that Ragsdale had purchased from Snead a tract of 150 acres of land, and Snead undertook to procure a good title to be made to .Ragsdale, on the payment of 10 dollars per acre. The amount of Snead’s interest in this contract, Rags-dale alleges was to be credited on Snead’s private debt.
In consequence of these arrangements, it is insisted for Ragsdale, that he is entitled to the whole of 150 acres, and furthermore that he is also entitled to a moiety of the 100 acres sold by Snead to Hagy, under their joint purchase, as he had not united in the sale.
Besides the claim of Ragsdale to a moiety at least of the 100 acres, the tract in consideration of which the two bonds were executed, it appeared that a portion of the purchase money was still due to Fulcher, the vendor of Snead and Ragsdale; but the amount so in arrear was uncertain, and has only been ascertained upon the settlement of transactions between these parties, of an involved and complicated nature.
In addition to this, it was alleged that there was a considerable portion of the purchase money still unpaid by Fulcher to his vendor Jacob Clark. That the claim had been transferred to John M. Preston, who had instituted and was then prosecuting a *191 suit in the County court of Washington county, to subject the land to the payment of this debt.
Such was the position of Hagy when sued upon the *bonds he had executed for the price of the 100 acres. The legal title was outstanding and his vendor could make him no title. No partition had been made between Snead and Ragsdale, and the latter under the joint purchase, claimed a moiety of the land as his. There was an admitted balance of the purchase money due to the immediate vendor of Snead and Ragsdale. A claim was asserted and a suit was depending to subject the land to the payment of a debt alleged to be due to a more remote vendor; and Snead, it is averred in the bill, and appears to be admitted throughout the recort^, was at that time insolvent. Hagy was compelled to resort to a court of equity to clear up the difficulties about the title; and that being his position, was it incumbent on him to set up his offsets in the action at law? The right to enjoin the payment of the purchase money where there is an incumbrance on the land purchased, is well settled. In Virginia, an injunction will be sustained after a conveyance, although there has been no actual eviction, but upon proof of a better title to the land in a third person. Ralston v. Miller, 3 Rand. 44.
There could be no doubt, therefore, if the bonds had remained in Snead’s hands, that a court of equity would have enjoined the payment until the difficulties about the title had been removed. It was uncertain, when the suits were instituted and the judgments confirmed, whether Hagy would get anything by his purchase. The alleged incumbrances for the purchase money covered the whole tract; and if the pretensions of Ragsdale were well founded, there would be little left for Hagy under his purchase from Snead. Though Snead might hold his bonds, which at law constituted a debt, it was still necessary to go into equity to ascertain whether in fact any debt existed. His bill, therefore, prayed that the contract of purchase should be rescinded, and his obligations canceled in *the event of his being unable to get a good title to the land.
In this state of uncertainty, it would have been improper to have relied on his offsets at law, for it would have been an admission that there was a valid debt against him to the extent of the offsets, whereas he owed nothing unless he could get the land. That was the principal controversy, and that could be settled in equity alone. When it was so settled, and a debt ascertained to be due, it would be proper to enquire into the offsets. If the offsets had been offered and allowed at law, and it turned out that no title could be made, he would be driven to another action to recover the amount of the offsets for the failure of the consideration ; and thus by requiring him to rely on his offsets at law, on the penalty of losing them entirely, he might be compelled to surrender bonds and securities constituting evidences of debt, and be driven to recover the money back in an action of assumpsit for the failure of the consideration. A portion of his offsets arose out of the contract in relation to the land itself. He had paid 423 dollars 88 cents on his first purchase. The land when surveyed, in the progress of this suit, was found to contain 43% acres, amounting, at 8 dollars per acre, to 348 dollars; leaving a balance, which, by the terms of their arrangement, was to be paid in land. This was an offset which could only be ascertained and fixed by a survey. Under every view of the case, it seems to me the court of chancery was the proper forum to decide upon the validity of the debt; to ascertain whether anything was due; and then as an incident to the principal subject of which it clearly had jurisdiction, and to avoid multiplicity of actions, to pass upon the offsets, no matter what was their character. But where, as in this case, a portion arose out of the contract of sale and purchase, and another portion was an equitable offset at the date of *the note and the assignment, it would have been competent for a court of equity to have allowed them,, although not relied upon at law. If Snead were the party claiming the benefit of the judgments, I do not think he could be heard to make this objection; and unless Hagy has done something to waive his equity, as regards the assignees of Snead, they can occupy no higher position. It is not alleged or proved that they were induced to take the assignments in consequence of any assurances from the obligor. They stand like all other assignees, and take the obligations assigned to them subject to all the equities which affected them in the hands of Snead. There is nothing whatever to distinguish their case from that of other bona fide assignees who have paid their money for that which turned out to be of little or no value. The obligor has been guilty of no laches in the assertion of his equity. Suit was instituted, and judgments recovered at the earliest possible period after the notes fell due. He interposed no delay, and at the first term after the notes became payable, filed his bill, convening all the parties to settle the difficulties about the title, and to ascertain whether anything would be due from him, and to distribute it amongst those entitled to it, according to their rights. I think the court had jurisdiction to allow the offsets claimed by the appellee Hagy, and that there was no error in the decree directing an account of such offsets, and overruling the 1st, 2d and 3d exceptions of the assignees Greenways and Smith to the second report of M. C. Lynch, allowing some of said offsets. An objection was made in the argument here' to allowing a credit for the sum of 423 dollars 88 cents," the full amount of cash and notes advanced and transferred to Snead at the time of the first purchase, because the bill suggests a doubt whether one of the notes so transferred, a note on Clevinger and- Clarke for 90 dollars, had been *192 made. The commissioner in *his report sets forth facts, which unexplained justified him in treating it as a payment to Snead; and as there was no exception to the report crediting Hagy with the 423 dollars 88 cents, it is too late to raise the objection here.
Nor do I think there was any error in so much of the decree as held that the appellee Hagy was entitled to a conveyance from Ragsdale, as well for the 100 acres for which he held Snead’s title bond as for the 43% acres for which he held the title bond of both. The allegation in Ragsdale’s answer that when he became a party to the contract of the 3d of August 1839, by signing the title bond, it was agreed between Hagy, Snead and himself, that the contract of the 26th of August 1839 should be canceled, is an affirmative allegation, unsupported by proof. His pretension to claim the 150 acres in virtue of his contract with Snead of the 11th November 1839, and a moiety of the 100 acres as a joint purchaser with Snead, it appears to me is unfounded. It appears from the facts in the case, that Snead made the contract with Fulcher, and Ragsdale subsequently united with him in the purchase. It is alleged in the bill that when the appellee Hagy purchased, Snead seemed to be exercising exclusive control over the land purchased, and had placed him in possession, which he continued to hold without interruption. The answers of both Snead and Ragsdale admit that there was an understanding between them that Snead was to take the entire tract and pay the purchase money. It was. during this arrangement that Snead sold a portion of the land to Hagy. One of the purchases was sanctioned by Ragsdale, by his uniting in the title bond, though the whole consideration had been paid to Snead. It furthermore appears from the report of the commissioner that Snead had advanced more of the purchase money to Fulcher than the value of the land sold by him to *Hagy. Under these circumstances, and if there had been no other arrangement between Snead and Ragsdale, the latter should riot be permitted to disturb the sales made by his cotenant, sanctioned in part by himself, and made at a time when by his own agreement, the whole subject had been committed to the control of his cotenant; and when too, more than a moiety of the land remained undisposed of, exceeding in value the amount paid by him on the joint purchase. The agreement of the 11th November 1839, though somewhat obscure in its terms, when construed by the light of surrounding circumstances, so far from disaffirming, impliedly sanctions the sales made by Snead. Finding that Snead was unable to comply with the arrangement to take the whole tract and pay the purchase money, Ragsdale agreed to take what remained unsold upon the terms mentioned in the agreement. In consequence of the arrangement under which Snead had claimed the whole tract, the new agreement recited that Rags-dale had purchased the 150 acres from him, and made no allusion to their joint ownership under the purchase from Fulcher. The 150 acres was the residue after deducting the portion sold to Hagy. The court rightfully construed these transactions as being equivalent to an equitable partition, and properly held that the purchase should be apportioned between them according to the value of the lands held by each, taking Snead’s portion to be the land sold by him to Hagy. Nor do I think there was any error in overruling the 2d exception of the appellant Ragsdale to the first report of the commissioner. His first and third exceptions were in effect sustained by the decree of the 25th May 1847. Nor was there any error in overruling his exceptions to the second report of the commissioner, or in so much of the decree as ascertained that there was a balance of 219 dollars 61 cents due to Fulcher on account of the purchase money, *with interest from the 15th December 1840 until paid; and that Snead had overpaid the sum of 256 dollars 33 cents beyond his proportion of the purchase money. But it seems to me the Circuit court erred in holding that this surplus overpaid by Snead should enure to the benefit of Snead’s assignees, to compensate them in part for that portion of their debts which was lost by allowing Hagy’s offsets. The assignees had no lien on this fund; their notes were a lien on the land sold to Hagy, but that lien did not attach to the land retained by Ragsdale. For the sum so overpaid, Snead would stand in the place of the vendor, and could subject Ragsdale’s portion; Tompkins v. Mitchell, 2 Rand. 428; but his assignment of Hagy’s bonds did not transfer this lien to his assignees. If a portion of the debts assigned be lost, the assignees stand like other general creditors, with no right to subject any specific fund of the assignor to their indemnity. In the present case, it appears from the admissions of Snead and the evidence in the record, that he was debtor on private account to Ragsdale in a much larger sum than the amount of purchase money overpaid by him. He cannot therefore require Ragsdale to pay the excess to him, or charge it on Ragsdale’s portion of the land if the latter chooses to give him credit for the amount on their private accounts. This is a matter for adjustment between themselves, and not involved in the present controversy. The appellee Hagy was only so far interested in the accounts between Snead and Ragsdale, as they related to the payment of the purchase money of the land sold to him; and when it was shown that Snead had paid so much of the purchase money as was equal in amount to the value of the land, he had established all that was necessary to his case. I think the court also erred in not charging the balance of the purchase money due to Fulcher on the 150 acres of the land held by Ragsdale, and in *omitting to decree a sale of it unless the money should be paid to the commissioner of the court within some limited *193 time; as Hagy should not be delayed in procuring his legal title by the omission of Ragsdale to pay the balance of the purchase money.
As to the suit by Preston to subject the land to the lien of a remote vendor, the record does not disclose what disposition was made of it. This matter seems not to have been noticed farther in the progress of the cause by the parties or the court, and it has probably been determined against the validity of the claim, as was stated by the counsel.
The other judges concurred in the opinion of Allen, J.
The decree of the court is as follows:
The court is of opinion that the Circuit court erred in holding that the overpayment of the purchase money by the appellee Snead should enure to the benefit of Smith and of the Greenways, the assignees of the bonds executed to him by the appellee Hagy; and in decreeing that the appellant should pay the sum of 256 dollars 33 cents, with interest, to the commissioner of the court, to be apportioned between the assignees ratably. The assignees had no lien on that fund, and could not object to the same being applied by Snead to the payment of his individual debt to Ragsdale, or to prevent the latter front setting off the private debt due to him by Snead, against the amount aforesaid ascertained by the decree to have been overpaid by Snead. This was a matter to be adjusted between Snead and Ragsdale, their private accounts not being in issue in this controversy.
The court is further of opinion that as the appellee Hagy went into chancery to ascertain the amount of and to clear up the incumbrances, to the end that he might obtain a title to the land purchased by him, the *court should have gone on and rendered a decree against the appellant for 219 dollars 16 cents, the balance of the purchase money due to Fulcher, with interest from the 15th December 1840 till paid; and unless paid within a prescribed period, the 150 acres of land belonging to Ragsdale should have been subjected to sale for the payment thereof, so that upon the payment of said incumbrance, the deed executed ' by Fulcher to Snead and Ragsdale could have been delivered for recordation, or a decree could have been entered for the execution of a new conveyance by Fulcher or a commissioner in his behalf to Snead and Ragsdale, if the deed delivered as an escrow at the time of the purchase could not be produced; and a' decree also pronounced for a conveyance to the appellee Hagy, by Ragsdale and Snead, or by a commissioner in their names, for the 143% acres described in the title bonds made exhibits with the bill.
It is therefore adjudged and ordered that said decrees, so far as the same are herein declared to be erroneous, be reversed and annulled, and that in all other respects the said decrees be and the same are hereby affirmed. And it is further adjudged and ordered that the appellant Recover ‘ of the appellees, except the appellee Hagy, his costs about his appeal; and it is further adjudged and ordered that the appellee Hagy recover of the appellant his costs by him about his defence here expended, he being the party substantially prevailing, so far as his interests were affected by said appeal. And this cause is remanded for further proceedings according to the principles aforesaid, in order to a final decree.
ASSIGNUENTS.
I. Definitions.
3. In General.
II. Who Is an Assignor.
1. Competency.
III. What May Be Assigned.
1. Original Doctrine.
2. Choses Ex Contractu in General,
a. Insurance Policies.
Id. Assignments of Leases.
c. Assignments of Bonds.
d. Possibilities and Expectancies.
3. Choses Ex Delicto.
IV. What Constitutes an Assignment.
1. No Particular Form Necessary.
a. Intention.
b. Assignment by Separate Writing.
c. May Be Made by Parol.
2. Necessity for Delivery.
3. Operations of Certain Assignments.
a. Order on a Fund.
b. - Bills of Exchange.
c. Power of Attorney Coupled with an Interest.
d. Mere Promise to Pay.
4. Partial Assignments.
5. Consideration.
6. Notice.
V. Effect of Assignment.
1. Assignee Tates Subject to Equities.
a. Latent Equities of Third Persons. ■
2. What Passes by Assignment.
a. Assignment of the Chose Carries the Security.'
3. Eights and Liabilities of Parties.
a. Assignor Loses Control by Assignment.
b. Eight to Go against Assignor.
bb. Warranties of Validity Generally,
cc. Failure to Collect from Obligor.
ccc. Diligence — General Eule.
c. Priority of Assignments.
i. Right to Sue.
a. At Law.
b. In Equity.
c. Effect, in General, of Statutes.
cc. Upon Equity Jurisdiction.
5. Estoppel.
VI. Pleading and Practice.
1. Allegations of Payment.
2. Proof of Assignment.
3. Statute of Limitations.
4. Action of Assumpsit.
5. Parties.
VII. Evidence.
1. Scope of Section.
2. Effect of Death of One Party.
3. Possession as Evidence of an Assignment.
VIII. Eecordation of Assignments.
*194 Cross References to Monographic Notes.
Assignments for the Benefit of Creditors.
Attachments, appended to Lancaster v. Wilson, 27 Gratt. 624.
Bankruptcy and Insolvency, appended to Dillard v. Collins, 25 Gratt. 343.
Bills, Notes and Checks.
Bonds, appended to Ward v. Churn, 18 Gratt. 801.
Estoppel, appended to Bower v. McCormick, 23 Gratt. 310.
Injunctions, appended to Claytor v. Anthony, 15 Gratt. 518.
Insurance, Life and Accident, appended to McLean v. Piedmont, etc., Life Ins. Co., 29 Gratt. 361.
I. DEFINITIONS.
1. IN GENERAL.
An Assignment Differs from a Surrender. — An assignment of an estate for life or years is a transfer of the whole interest of the assignor to some one other than the immediate reversioner or remainderman, holding an estate which was larger than that of the assignor, but when the transfer is made to the person holding the immediate reversion or remainder in fee, it operates as a surrender. Scott v. Scott, 18 Gratt. 150.
An Assignment Differs from a Lease. — “By alease a lessor grants an interest less than his own, reserving to himself a reversion; but by an assignment, he parts with the whole property. If a man convey the whole of his interest by deed, it is an assignment, not a lease, although by the deed he reserves rent to himself, and the deed contains covenants which are not in the original lease or conveyance.” Scott v. Scott, 18 Gratt. 177.
Indorsement — Assignment.—indorsement is a term usually applied to. the transfer of negotiable paper, while assignment is applied to the transfer of choses in action, not negotiable.' Freeman’s Bank v. Ruckman, 16 Gratt. 126.
An assignment, as to bonds and notes, implies more than indorsement; it means indorsement by one party with intent to assign, and an acceptance of that assignment by the other party. Marietta Bank v. Pindall, 2 Rand. 465.
Passage of Title. — The legal title to bonds and notes, not negotiable, passes by assignment only; and as to them, indorsement is not the same as assignment. Bank of Marietta v. Pindall, 2 Rand. 475.
In Welsh v. Ebersole, 75 Va. 658, the court said: “The cases of Bank of Marietta v. Pindall, 2 Rand. 475, and Freeman’s Bank v. Ruckman, 16 Gratt. 126, seem to fully establish the doctrine that indorsement of the obligee’s name upon the bond accompanying the transfer may be declared on as a common-law assignment, and that an averment that the instrument was endorsed and delivered is in effect an averment that it was assigned. Both of these cases, however, were decided upon a demurrer to the declaration. They do not establish that such an indorsement may not be treated as a guaranty if such was the agreement of the parties."
Chose in Action. — A balance in bank to the credit of a depositor is, strictly speaking, a chose in action. It is often treated, however, as ready money, and whether it is to be treated as one or the other depends upon the circumstances of the particular case. Koss v. Kastelberg, 98 Va. 278, 36 S. E. Rep. 377.
A chose in action is the money, damages or things owing; the bond or note, etc., is but the evidence of it. First Nat. Bank of Richmond v. Holland, June 20, 1901 (Va.), 39 S. E. Rep. 126.
Assignment — Subrogation.—“In the first place, we must be careful to distinguish between an assignment of the mortgage debt, and a mere right of subrogation to the lien of the -mortgage creditor. Assignment is the act of the parties, and depends generally upon intention. Where the nature of the transaction is such as imports a payment of the debt, and a consequent discharge of the mortgage, there can, of course be no assignment, for the lien of the mortgage is extinguished by the payment. * * Subrogation is, however, a very different thing from assignment. It is the act of the law, and a creature of a court of equity, depending not upon contract as assignment does, but upon the principles of equity and justice.” Gatewood v. Gatewood, 75 Va. 410, 411, opinion of Staples, J. See also, Bankers’ Loan, etc., Co. v. Hornish, 94 Va. 608, 27 S. E. Rep. 459.
Assignment of Bond and Negotiable Note. — “There is a marked distinction between the effect of an assignment of a bond and of a negotiable note or bill of exchange. In case of a bond, it is, at law, a valid security for its amount, even as between the parties, although there is no consideration for it. It is therefore a subsisting security before it is transferred. A negotiable note or bill of exchange, on the contrary, is not a valid or subsisting security, as between the parties, if it be not made upon consideration; and acquires validity only from its first negotiation. The assignor of a bond is in no event liable to repay anything more than the consideration he received; and that not by force of the contract, but upon the general principle, that the consideration of the contract having failed, he is bound to restore what he has received.” Green, J. Whitworth v. Adams, 5 Rand. 377.
Assignment — Guaranty.—A guaranty is not an absolute undertaking as in case of suretyship, but a conditional one to answer for the debt, default, or miscarriage of another. The guaranty payment of a bond or note is an undertaking, on the part of the guarantor, that he will pay the debt if the principal does not. A guaranty may embrace negotiable instruments and common-law obligations for the payment of money. On the other hand, assignments relate only to nonnegotiable instruments. The assignor agrees that the assignee shall recover the full amount of the bond from the debtor, and if he fails to do so after using due diligence, he, the assignor, will make it good. In case of assignment the assignee’s right of recourse rests on the ground that a valuable consideration was received, which fact, however, is open to proof, whereas, in case of guaranty, the guarantor is liable, whether he received any consideration or not. Welsh v. Ebersole, 75 Va. 656, opinion of Staples, J.
Import of an Assignment. — “An assignment presupposes a property in the assignor, and a recovery may be had against him on the failure of the obligor on the ground of a debt due by him to the assignee; of which, the draft, called the assignment, is an evidence.” Cunningham v. Herndon, 2 Call 523. See also, Mackie v. Davis, 2 Wash. 219.
Great Case on Assignments. — It was said in Merchants’ National Bank v. Spates, 41 W. Va. 27, 23 S. E. Rep. 682, by Holt, P., delivering the opinion of the court: “The case of Mackie v. Davis, 2 Wash. 219, was decided in 1796, and has been a leading case in Virginia and in this state on the general doctrine of the assignment of nonnegotiable instruments. *195 and the general doctrine there discussed has from that day to this, been followed, expanded, and applied in many cases.”
II. WHO IS AN ASSIGNOR.
Although the defendant advises the plaintiff to take a certain note, and expresses his confidence that the maker and surety are good, and that in the event of the plaintiff's marriage he will buy the note from her should she then need money, still this will not make him an assignor of the note. Hughes v. Frum, 41 W. Va. 445, 23 S. E. Rep. 604.
Holder of Instrument. — Even if the obligee of a valid instrument, who endorsed it in blank, is conclusively presumed to be an assignor, no such presumption can attach to one who was never the holder of the instrument, to whom it was never delivered as a valid obligation, and whose only connection with it was to endorse his name upon it. Welsh v. Ebersole, 75 Va. 652, 659.
Assignee Not a Purchaser. — The assignee of purchase money bonds, secured by a vendor's lien, is assignee oí a chose in action only and not such a purchaser of land for value as will be protected by Code of Va. 1873, ch. 182, § 8, but he stands in the shoes of his assignor and is only entitled to his rights and remedies. Gordon v. Rixey, 76 Va. 694.
Surviving Partners. — Surviving partners are not assignees, in law, of their deceased partners, and § 23 of ch. 130 of the Code of West Virginia does not apply to actions against such survivors, when a party defendant is a witness to prove payment to a deceased partner during his life. Carlton v. Mays, 8 W. Va. 245.
1. COMPETENCY.
Insolvent Debtor. — “An insolvent debtor may, notwithstanding his insolvency, make a valid assignment of a chose in action owned by him, and the bona fide assignee for value of such chose in action takes title thereto, superior to the lien of a fieri facias against such debtor. It is immaterial whether the debtor intended to commit a fraud in making the assignment or not, if the assignee has no notice of such intent, or of the existence of the fieri facias, and pays valne.” Shields v. Mahoney, 94 Va. 487, 27 S. E. Rep. 23.
Tenants in Common. — Where bonds are executed to two persons, and the joint interest appears on the face, it is impossible that a purchaser from one of them could have been misled, and hence he only takes such interest as his assignor possesses, for though each may sell his own interest, neither could dispose of the interest of the other without his consent. Brown v. Dickenson, 27 Gratt. 690.
Partners. — One partner has no assignable interest in the debts of the firm until the firm debts are paid, but one partner can assign firm assets to pay firm debts. Kenneweg v. Schilansky, 45 W. Va. 521. 31 S. E. Rep. 949.
Firm Paper. — In the absence of any express stipulation to the contrary, one of several partners may assign a chose in action, due the firm, as each partner possesses equal and general authority, to make such transfers, when within the scope and objects of the partnership, and in the course of its trade and business. Clarke v. Hogeman, 13 W. Va. 718.
Intoxication — An assignment under seal, for valuable consideration, ought not to be avoided on the ground that the party was intoxicated at the time, if his assent was afterwards given, when not disabled by intoxication or otherwise. Moreover, the intoxication must be such as to render the party incapable of business, in order to vacate his assent to the assignment. Arnold v. Hickman, 6 Munf. 15; Mettert v. Hagan, 18 Gratt. 231.
III. WHAT MAY BE ASSIGNED.
1. ORIGINAL DOCTRINE. — By the ancient common law, a chose in action was not assignable, and the assignment had no effect at law or in equity. But in later times, as courts of equity 'protected assignments mad e in satisfaction of a precedent debt (but not voluntary assignments, or those for a consideration then paid, owing to the rule against maintenance), courts of law also adopted this distinction, and took notice of the equitable rights of the assignee, when a suit was brought in the name of the assignor for his benefit. Later, however, courts of equity protected all assignments for a good consideration, and the courts of law followed their example. Garland v. Richeson, 4 Rand. 268; Brown v. Dickenson, 27 Gratt. 693, opinion of Staples, J.; Stebbins v. Bruce, 80 Va. 389.
Reason for Rule. — The reason choses in action were not assignable at ancient common law is that, “it would be the occasion of multiplying of contentions and suits, of great oppression of the people, and chiefly of the terre-tenants, and the subversion of the due and equal execution of justice.” Stebbins v. Bruce, 80 Va. 399.
2. CHOSES EX CONTRACTU IN GENERAL.— The rule is now well settled that choses in action are assignable at law, and that courts of law will protect the rights of the assignee, so far as not to permit the assignor to dismiss the suit or release the action. Garland v. Richeson, 4 Rand. 260. See also, Bentley v. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 585.
Patents. — A patent for lands, from the crown, may be assigned. Lee v. Tapscott, 2 Wash. 276.
Warrants. — Warrants and survey.s of land may be assigned, but not entries. Morrison v. Campbell, 2 Rand. 206.
Unsettled Account. — At common law an unsettled account was not assignable. But under the law as it exists at present, such accounts are assignable, and suits maybe brought thereon in the name of the assignee. St. Lawrence Boom & Mfg. Co. v. Price (W. Va.), 38 S. E. Rep. 527.
Running Account — An ordinary running account between parties, showing a balance due by one party to the other, is assignable under the statute which authorizes the assignee of any bond, note or writing, not negotiable, to sue thereon in his own name. Va. Code 1887, § 2860; Code of W. Va., ch. 99, § 14; Porter v. Young, 85 Va. 51, 6 S. E. Rep. 803. See also, Stebbins v. Bruce, 80 Va. 389.
Bills of Exchange — Statute of Anne. — Bills of exchange, by the law merchant, were always assignable, and “did not owe this quality to statutory provisions,” says Judge Roane in Norton v. Rose, 2 Wash. 249, but the statute of Anue made promissory notes assignable in like manner as bills of exchange, thus putting these two classes of instruments on the same footing in England, but not with us, as the statute of Anne was never in force here, hence they remained as at common law, except in so far as we have changed the common law by statute. Caton v. Lenox, 5 Rand. 40.
Executory Contracts. — An agreement to sell wood, under which the vendee has made certain advances, may be assigned by the latter as an ordinary running account. Porter v. Young, 85 Va. 49, 6 S. E. Rep. 803.
*196 Agreement to Convey. — An agreement for the conveyance of lands may be assigned, and moreover the assignor will not be held liable on a certificate as to the goodness and quality of the land, upon proof of their forgery, no fraud or knowledge of fraud being shown on his part, and where the assignment was "without recourse.” Crawford v. McDonald, 2 H. & M. 189.
Agreement to Build Party Wall. — where a party covenants that whenever he, his assigns, or grantees use a certain party wall, they will pay half the expenses of its construction to whomsoever may be assigned the right to collect the same, and further covenants that it shall run with the land; a lien is thereby created on the land, which will bind it in the hands of subsequent purchasers, until discharged, and the promise to pay being personal to the owner of the lot constructing the wall, such owner may assign the same to anyone he wishes; and such assignee may maintain a suit to enforce the payment of such liability. Parsons v. Building Ass’n, 44 W. Va. 335, 29 S. E. Rep. 999.
Equitable Liens. — An equitable lien is assignable, and may be enforced in a court of equity by the assignee. Schmertz v. Hammond (W. Va.), 35 S. E. Rep. 945.
Mechanics’ Lien. — It seems to be settled that a building contract secured under a mechanics’ lien law may be assigned in equity at least before the work is done and that the assignee may maintain an action thereon in his own name and he succeeds to all the rights of the mechanic. A contract of this character is embraced in the statute which allows the assignment of all bonds, bills, and promissory notes, and other writings obligatory whatsoever, and provides that the assignee may maintain an action thereon in his own name. To hold otherwise would be an injury to the builder as impairing the value of his lien, and the owner cannot be injured as the assignee'stands in the shoes of the obligee, and must allow all just discounts, not only against himself, but against the assignor before notice of the assignment. Hence no reasons of public policy forbid the assignment of such contracts. Iaege v. Bossieux, 15 Gratt. 83, 76 Am. Dec. 195. See also, Schrieber v. Bank (Va.), decided March 14, 1901, 38 S. E. Rep. 134.
Broken Covenants. — “It must be noted, that no covenant which is broken is capable of being after-wards assigned at law. When, therefore, a covenant is violated, the suit must be brought by the party at that time interested,, and not by one to whom the land may afterwards have come by assignment.” 2 Min. Inst. (4th Ed.) 717; Wash. City Sav. Bk. v. Thornton, 83 Va. 164, 2 S. E. Rep. 193; Dickinson v. Hoomes, 8 Gratt. 396; Marbury v. Thornton, 82 Va. 705, 1 S. E. Rep. 909. But see May number of Va. Law Reg. 1901, p. 67.
Homestead Exemption. — A householder who has set apart as exempt, under what is known as the homestead law, á chose in action, may assign the same as collateral security for a debt, and his assignee will take priority over an execution issued on the debt in which the homestead is not waived, though the assignee had notice of the execution. Williams v. Watkins, 92 Va. 680, 24 S. E. Rep. 223.
Coupon Bonds. — If the contract of guaranty is not negotiable at law along with the bond and coupons, it is assignable in equity, and an interest in it passes in equity to each successive holder of the bond or coupon. In order to give effect to the manifest intention of the parties, the right to enforce the guaranty, unless lost by laches or otherwise, must be held to be coextensive with the right to enforce payment of a bond or coupon. The guaranty as an accessory to the bond or coupon, follows it and adheres to it in equity, and the right to enforce the guaranty must be determined by the right to demand payment of the bond or coupon. Arents v. Com., 18 Gratt. 750, 768.
a. Insurance Policies.
Fire Policies — Before Loss. — Stipulations avoiding the policy on the ground of an assignment before loss without the consent of the insured are valid. Such stipulations, however, may be waived by the insurer. Stolle v. Aetna F. & M. Ins. Co., 10 W. Va. 546. The rule that a policy is not assignable without the consent of the insurer applies to absolute assignments. A parol agreement to assign will not avoid the policy. Wheeling F. & M. Ins. Co. v. Morrison, 11 Leigh 354.
After Loss. — Although the policy provides that it shall be void if assigned without the consent of the insurer, such assignment is valid if made after the loss. Nease v. Aetna Ins. Co., 32 W. Va. 283, 9 S. E. Rep. 233; Bentley v. Standard Fire Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584; Stolle v. Aetna F. & M. Ins. Co., 10 W. Va. 546.
Life Policies. — The assignment of a policy of life insurance to a party not having an insurable interest in the life of another, is as objectionable as the taking out of a policy in his name, because such a practice as this would be made a cover for mere speculative risks, and would evade the law against wager policies. But when the assignment is not made for such purposes, a policy of life insurance, without restrictive words, is assignable by the assured for a valuable consideration, equally with any other chose in action, and payment may be enforced by the assignee. Roller v. Moore, 86 Va. 512, 10 S. E. Rep. 241.
Absolute Assignment of Life Policies. — Where the assured makes an assignment absolute on its face, of a policy of life insurance, and it appears that in former transactions about the same matter the policy was held by the assignee as security for advances made by him for premiums and assessments on the policy, then it will stand merely as security for the advances made by the assignee. Roller v. Moore, 86 Va. 512, 10 S. E. Rep. 241.
The assignee of a life insurance policy, upon the life of a person in whom he has no insurable interest, but whose premiums he has paid, has a claim under the policy for an amount necessary to reimburse him for the premiums he has paid, if the policy is not void- in its inception. The residue of the proceeds of the policy belong to the estate of the insured. New York Life Insurance Co. v. Davis, 96 Va. 737, 32 S. E. Rep. 475; Tate v. Commercial Building Ass’n, 97 Va. 74, 33 S. E. Rep. 382, in accord. See also, Bank v. Speece (Va.), 37 S. E. Rep. 843.
b. Assignments or Leases. — A covenant to pay taxes is a covenant that runs with the land. An assignment of the term by the lessee creates a priority of estate between the lessor and assignee after the acceptance of the leasehold estate by the latter, and an assignee of the lease is fixed with notice of its covenants, and takes the estate of his assignor cum onere, and each successive assignee of the lease, because of priority of estate, is liable upon covenants maturing and broken while the title is held by him. West Virginia C. & P. R. Co. v. McIntire, 44 W. Va. 210, 28 S. E. Rep. 696.
Leases Involving Personal Trust. — A deed confer *197 ring upon skilled miners the privilege to raise ore, and to use any timber or water power anywhere on a tract of land, and to have and to hold the land as long as they deem it worthy of searching for minerals, and in which they agree not to use the land for any other purpose, is a lease which is not assignable, the personal skill of the miners being contracted for. Hodgson v. Perkins, 84 Va. 706, 5 S. E. Rep. 710. See also, Barksdale v. Hairston, 81 Va. 764.
c. Assignments of Bonds.
How Assigned. — .-Bonds and notes may be assigned by mere transfer, without endorsement, in which case, however, only the equitable title passes, and possession thereof creates a prima facie case of ownership. The assignment of bonds or notes, however, is usually affected by an endorsement on the back thereof, declaring the assignment, without the name of the assignor subscribed. The mere endorsement of the name, however, will suffice, as the holder may afterwards write the assignment above it. Bell v. Moon, 79 Va. 351.
Bonds with Collateral Condition. — A bond, with a collateral condition, was not assignable before the act of Dec. 1795, which allows bonds of this nature to be assigned, and permits the assignee to sue in his own name, and therefore the assignee of such a bond, could not maintain an action on it prior to that time. Craig v. Craig, 1 Call 483; Henderson v. Hepburn, 2 Call 233.
An assignment, made after the act of 1795, by which bonds with collateral conditions were made assignable, is good, though the bond was dated before that act. Meredith v. Duval, 1 Munf. 76.
Prison Bounds Bonds. — An endorsement of his name on a prison bounds bond by the sheriff, before action brought upon, is a sufficient assignment thereof. And the action may be maintained by the creditor as assignee without writing out the assignment; or the assignment may be written out in the progress of the trial after the jury is sworn. “Courts will consider that as done which may be done, and will not even require the formality of writing out a full assignment or endorsement at the time of the trial. This is the uniform practice in regard to ordinary bonds and notes, and is convenient and legal. There is no difference between a prison bounds bond and an ordinary bond, in this respect. The law directs the sheriff to assign and deliver the prison bounds bond to the execution creditor, and obliges the latter to receive it. ” McGuire v. Pierce, 9 Gratt. 167.
A bond for keeping the prison rules, though taken to the sheriff as such, and to his “executors, administrators and assigns,” instead of to him and his successors in office, as it should be, may be as-: signed by him to the creditor, and a suit may be maintained upon it. Meredith v. Duval, 1 Munf. 76.
Transfer of Title to a Bond. — Title to a bond can . only be transferred to another by a written assignment, or by delivering it to that other with the intent of transferring it. And the fact of such delivery must be shown, for without it there is no complete and valid assignment. Arnold v. Barrow, 2 Pat. & H. 1; Lewis v. Mason, 84 Va. 731, 10 S. E. Rep. 529.
Title of Assignee of a Bond. — The assignee of a bond under the statute of 1795, does not acquire the legal title to the debt, but an equitable right, which, by virtue of the statute, he may assert at law in his own name, and he has his election to sue, at law, in his own name, or in that of the original obligee for his benefit. Garland v. Richeson, 4 Rand. 266; Dunn v. Price, 11 Leigh 210; Feazle v. Dillard, 5 Leigh 31.
Suit by Assignee of a Bond. — The assignee of a bond cannot sue as obligee, but must set forth the assignment in his declaration. Gordon v. Browne, 3 Hen. & M. 219.
d. Possibilities and Expectancies. - A mere possibility or expectancy cannot be assigned either at law or in equity, and therefore, if when such order is given, there be neither an actual debt nor any contract, engagement, or arrangement, between the drawer and the drawee out of which a debt could arise, such a draft cannot operate as an equitable transfer of any subsequent debt. The First National Bank of Wellsburg v. Kimberlands, 16 W. Va. 592.
Proceeds of Pair. — The proceeds of a fair about to be held by an agricultural society, on their grounds, is not assignable, because it has neither an actual nor a potential existence. Huling v. Cabell, 9 W. Va. 522, 27 Am. Rep. 562.
Operation of Such Assignment at Law and in Equity. —“A contract for the sale of personal property, which the vendor does not own, will not take effect upon the goods when subsequently acquired, so as to pass a legal property in them to the purchaser, without some new act of the vendor after the property is acquired. At law, it is not a valid assignment. But the doctrine of equity is different. A sale, assignment, or mortgage, for a valuable consideration of chattels or other personal property to be acquired at a future time, operates as an equitable assignment, and vests an equitable ownership of the article in the purchaser or mortgagee as soon, as they are acquired by the vendor or mortgagor, without any farther act on the part of either; and this ownership a court of equity will protect and maintain at the suit of the equitable assignee.” In a contest, however, between an equitable claimant and a subsequent bona fide purchaser for value, holding the legal title, the latter must prevail. Pom. Equity Jur., § 1288; Braxton v. Bell, 92 Va. 229, 23 S. E. Rep. 289; Bank v. Turnbull, 32 Gratt. 695, distinguished and dictum disapproved.
Potential Existence. — "That which in every sense, is nonexistent — a nonentity — cannot be sold, is not property; but it need not have, in every sense, a perfect, tangible existence, to be regarded in law as capable of ownership. So it have a potential existence is enough. A man may not sell fruit from trees, or wool from sheep, which he does not, at the time, own, but otherwise if he then owns the trees or sheep. Their ownership gives potential existence to the fruit and wool and lambs, though as yet the trees have not blossomed, and the wool grown, or the ewes become pregnant. But a mere contingent possibility not coupled with an interest, is not the subject of sale, as all the wool one shall ever have, or the sheep which the lessee has covenanted to have at the end of the term. If rights are vested, or possibilities are distinctly connected with the interest or property, they may be sold.” Wiant v. Hays, 38 W. Va. 681, 18 S. E. Rep. 808, opinion of Brannon, J.
What Is a Potential Interest — Examples.—A mere possibility or expectancy of acquiring property, not coupled with an interest, does not constitute a potential interest, within the meaning of the rule, which allows potential interests to be assigned. The seller must have a present interest in the property, of which the thing sold is the product, growth, or increase. Having such an interest, the right to *198 the thing sold, when it shall come into existence, is a pr-esent. vested right, and the sale is valid. Thus, a man may sell wool grown upon his own sheep, but not upon the.sheep of another; or the crops grown upon his own land, but not upon the land of another. A mortgage of goods, which the mortgagor does not own.at,the time, though he acquires the property afterwards, is void. The weight of authority seems to be that a crop of grain, not yet sown has no potential or, actual existence, and cannot be assigned, Huling v. Cabell, 9 W. Va. 528.
Expectant Interest. — “An expectant heir may, in the lifetime of his ancestor, sell, assign, or release his expectant interest in the estate of the latter, whatever it may turn out to be upon his death, and a court of equity will enforce the contract if made in good faith and for valuable consideration.” 2 Am. & Eng. Enc. Law, 1029. See Lewis v. Madisons, 1 Munf. 303.
Future Interests. — By a sale of timber trees standing, to b.e chosen by the vendee, an interest passes which the vendee may assign, and his assignee has the same right to elect, and to specify the particular trees that, the vendee had when he made the purchase. And if, after the assignee has chosen and marked the trees, the vendor fells and converts them tó his use, the assignee may maintain an action of, trover against him to recover. McCoy v. Herbert, 9 Leigh 548, 33 Am. Dec. 256.
Future Saláry — Public Officers. — An assignment by an assessor or other public officer of his salary or compensation for future service, or continuing and yet incomplete service, not yet payable, is contrary to public policy, and invalid. Only past service is assignable, and the plaintiff must show that the service had been performed at the date of the service. It is hard to see why public policy should not prohibit the assignment of pay for past as well as future services, but, at any rate, the books do draw this .distinction. Stevenson v. Kyle, 42 W. Va. 229, 24 S. E. Rep. 887.
No Subsisting Contract of Service. — “If an assignment of future wages were made, when there was no contract of services, even though there had been prior to that such contract of service, the assignment would be inoperative, as it would be an assignment of that which had no potential existence, the future wages in such case being a mere possibility coupled.with no interest.” The First National Bank of Wellsburg v. Kimberlands, 16 W. Va. 593. Of this nature was the assignment in Huling v. Cabell, 9 W. Va. 528, which the court held inoperative.
3. CHOSES EX DELICTO. — While a right of action for mere personal torts, such as assault and battery, false imprisonment, malicious prosecution, defamation and deceit, which die with the party and do not survive, cannot be assigned, a right of action to recover damages for an injury to property, real or personal, may, however, be assigned. N. & W. R. R. Co. v. Read, 87 Va. 185, 12 S. E. Rep. 395; Dillard v. Collins, 25 Gratt. 346.
Test of Assignability, — Those tort actions are assignable that survive to or against the personal representative, if one of the original parties die. Those tort actions survive that are for wrongs to property, real or personal, or which grow out of breaches of contract, but not for wrongs done to thepersow oxreputation, or any purely personal wrong, apart from property or contract. Tyler v. Ricamore, 87 Va. 466, 468, 12 S. E. Rep. 799; Lee v. Hill, 87 Va. 497, 12 S. E. Rep. 1052; N. & W. R. R. Co. v. Read, 87 Va. 185, 12 S. E. Rep. 395. Actions for breach of promise to marry do not survive at common law, nor under the Virginia statute, Code Va., §§ 2654-5, and the breach of the implied contract of a medical practitioner or of an attorney to exercise skill in his profession does notsurvive at common law, and other injuries of a personal nature, although arising ex contractu. See Grubb v. Sult, 32 Gratt. 203; Flint v. Gilpin, 29 W. Va. 740, 3 S. E. Rep. 33.
It would seem, according to the common-law principle that actions which are survivable are likewise assignable; that in Virginia and West Virginia all actions for personal injuries are assignable. 3 Va. Law Reg. 609; Code of Va., § 2906; Acts 1893-4, p. 83; Code of W. Va., ch. 103, § 5.
Right of Action for Injury to Property. — it is well settled that a right of action against a railroad company for negligently setting fire to another’s property is an assignable chose in action, and the assigneemay maintain an action thereon in his own name. Tyler v. Ricamore, 87 Va. 466, 12 S. E. Rep. 799.
A right of action against the common carrier for injury to goods in the course of transportation, or for not delivering goods, is such a right of action as is assignable. N. & W. R. R. Co. v. Read, 87 Va. 190, 12 S. E. Rep. 395.
Fraud. — “While large classes of things in action are assignable even at law, there are certain species belonging to a class otherwise assignable, the assignment of which, either at law or in equity, is prohibited from motives of public policy; for example, an assignment which violates the policy of the law against champerty and maintenance. Hence the assignment of a mere right of action to procure a transaction to be set aside, on the ground of fraud, is not permitted.” 3 Pom. Eq., § 1276. Jeffries v. Improvement Co., 88 Va. 862, 14 S. E. Rep. 661.
In the case of Billingsley v. Clelland, 41 W. Va. 234, 23 S. E. Rep. 821, Dent, J., uses the following language; “I concede, that an assignment of a naked right to sue for a fraud is not assignable, as, where one by fraud acquires the property of another, the mere right to sue for it is not assignable, and a second purchaser from the vendor of the property cannot have the right to set aside the deed to the first purchaser, procured by fraud. So he could not set aside a judgment procured by fraud against his vendor.”
Slander. — A right of action, such as slander, which affects the character, and hence is merely personal, dies with the party, and is not assignable. Dillard v. Collins, 25 Gratt. 343.
IV. WHAT CONSTITUTES AN ASSIGNMENT.
1. NO PARTICULAR FORM NECESSARY — To constitute an assignment of a debt or other chose in action in equity no particular form is necessary. Any order, writing, or act, which makes an appropriation of a fund, will amount to an equitable assignment of the fund, and taking all the surrounding circumstances into consideration, if it appears that the assignor intended to assign a particular fund to the assignee, and the assignee so understood and accepted it, then it is sufficient to pass to the assignee the debt so secured. Tingle v. Fisher, 20 W. Va. 500; Bentley v. Standard F. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584; Feamster v. Withrow, 9 W. Va. 296; Atwell v. Towles, 1 Munf. 175; Cunningham v. Herndon, 2 Call 530; Switzer v. Noffsinger, 82 Va. 518.
“It seems well settled that, in order to constitute a valid equitable assignment, all that is necessary *199 is an order from the person to whom the money is due or coming, on the person in whose hands or under whose control it may be, to pay it to the payee.” Building Ass'n v. Coleman, 94 Va. 433, 26 S. E. Rep. 843.
The person to whom a bond was payable gave a written order to his creditor on the obligor’s administrator for the balance "of the bond. The administrator declined to accept the order, but nevertheless made several payments on account thereof. Held, that the assignment was a valid equitable assignment of the bond, and was enforcible in equity by the assignee. Switzer v. Noffsinger, 82 Va. 518.
Formal Reassignment Unnecessary — Where the agreement upon which an action of covenant is predicated appears to have been assigned to a third party by a written assignment attached thereto, and said written assignment appears to have been canceled by lines drawn across the same, said agreement being in possession of the plaintiff, it is error to dismiss his action for want of a formal reassignment of the agreement before the institution of the suit. Scraggs v. Hill, 37 W. Va. 706, 17 S. E. Rep. 185.
a. Intention.
Necessary Intention. — Although an assignment does not require any particular form of words, and though it may be oral or written, still there must be some act importing a particular intent to sell and assign ; the party must intend to dispose of the debt, as an act of sale, called an “assignment” and become bound as an assignor. It is a sale of the debt and he must intend to assume the place of the seller. There must be a sale, called an “assignment.” Hughes v. Frum, 41 W. Va. 445, 23 S. E. Rep. 604.
Intention Operates as Assignment. — Words which show an intention of transferring or appropriating a chose in action to or for the use of another, if based on a valuable consideration, will, in the contemplation of a court of equity, operate as an assignment. Tatum v. Ballard, 94 Va. 370, 26 S. E. Rep. 871.
Proof of Intention. — Though the orders do not specify clearly the funds out of which they are to be paid, yet as in all equitable assignments, anything, which indicates an intention to assign, will suffice, and as an oral declaration may he effectual for that purpose, parol evidence may be admitted to show the intention of the parties. The First National Bank of Wellsburg v. Kimberlands, 16 W. Va. 588.
Assignment Like a Sale. — Assignment of a chose is a sale, like a sale of a chattel. There must he an intent to divest the seller of all right and title, and vest it in the assignee. No formal words are necessary. Anything which shows an intention to assign on the one side, and an intent to receive on the other, will operate as an assignment, if sustained by sufficient consideration. Where no statute requires it, the assignment need not be in writing. Bentley v. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 587.
Transfers without Assignment. — It not unfreqnently happens, however, that transfers of bonds are made without assignment. In such cases, though the transfer passes the right to the bond, in case of a suit thereon, the suit must be brought in the name of the obligee, or last assignee of the bond; and in case the person in whose name the snit is brought should interfere to the prejudice of the holder, by dismissing the suit or by receiving the money, a court of equity would not only prevent it by injunction, but even a court of law will inquire who is the real owner, and forbid the obligee, or other person who has passed away his right, from interfering with the transferee. Bell v. Moon, 79 Va. 351.
Payment of Another’s Debt without Assignment Thereof. — Where a purchaser of land, pursuant to his contract, pays a lien on the land, binding his vendor’s estate in it, and such contract is abandoned by the parties, and the vendor becomes unable to enforce it, though no assignment was in fact made when the lien was lifted, still the right of substitution exists, and equity treats the case as though an assignment had in fact been made, according to the well-known maxim that “equity regards that as done which ought to be done.” James v. Burbridge, 33 W. Va. 272, 10 S. E. Rep. 396.
b. Assignment by Separate Wrtting.-A separate instrument may assign a debt and its lien. Turk v. Skiles, 45 W. Va. 82, 30 S. E. Rep. 236.
Delivery of Separate Writing. — If the written assignment of the bond, upon a separate paper, is transferred and delivered to the assignee, this is sufficient to pass the equitable title to the note, and the delivery of the note is not necessary to make a valid assignment thereof. Tatum v. Ballard, 94 Va. 370, 26 S. E. Rep. 871.
c. May Be Male by Parol. — As a general rule, a valid equitable assignment of a debt or other chose in action, whether evidenced by writing or not, may be made by parol as well as by deed, and it is not important whether it be by writing or mere words. Wilt v. Huffman, 46 W. Va. 473, 33 S. E. Rep. 279; Hughes v. Frum, 41 W. Va. 445, 23 S. E. Rep. 606; Bentley v. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584.
Oral Assignment of an Account. — “An assignment of an account may be made by oral agreement, without writing, or any written statement of the claim assigned, and, if founded on a valid consideration, vests in the assignee a right to proceed in his own name for the collection of the debt. So also an oral assignment of a portion of a debt for a valid, consideration is valid.” This language was used in Risley v. Bank, 83 N. Y. 318, and approved in Wilt v. Huffman, 46 W. Va. 473, 33 S. E. Rep. 280.
A parol assignment of an open account in consideration of which more goods are shipped and further credit is given is a good equitable assignment, although not afterwards reduced to writing, as promised. Kenneweg v. Schilansky, 45 W. Va. 521, 31 S. E. Rep. 949.
Verbal Assignment Revocable. — A verbal direction to another man to pay the debt of a third person out of his funds, being without consideration, is void, and though, if complied with before countermand, the party cannot complain, yet it may he countermanded at any time. Beers v. Spooner, 9 Leigh 153.
Parol Agreement to Assign. — A parol agreement to assign a policy of fire insurance, which contains a provision that it is to have no effect if assigned, will not avoid the policy. Wheeling F. & M. Ins. Co. v. Morrison, 11 Leigh 354.
2. NECESSITY FOR DELIVERY. The rule emeat emplor applies to the assignee of dioses in action, and especially is this so, when the assignor has not the chose in possession to deliver to the assignee. The courts have uniformly decided that as to choses the rule applies. Daily v. Warren, 80 Va. 522; Brown v. Taylor, 32 Gratt. 138.
Delivery Not Essential Where There Is No Written Evidence of Debt. — When there is no written obligation or evidence of debt, an oral assignment of the *200 debt, without any delivery, either actual or symbolical, is sufficient. Wilt v. Huffman, 46 W. Va. 473, 33 S. E. Rep. 279.
Verbal Assignment without Delivery. — A verbal agreement to assign a bond as indemnity, by a party who afterwards becomes a bankrupt, is good as against the assignee in bankruptcy, although the written assignment and delivery does not take place until after the declaration of bankruptcy. Tucker v. Daly, 7 Gratt. 330.
Delivery of Evidence of Contract Sufficient — It was once held that the assignment of an instrument must be of as high a nature as the instrument assigned. But this rule has been very much relaxed, if not overthrown; and, indeed, it has been determined that the equitable interest in a chose in action may be assigned for valuable consideration by a mere delivery of the evidence of the contract, and it is not necessary that the assignment should be in writing. Scraggs v. Hill, 37 W. Va. 706, 17 S. E. Rep. 187.
Direction to Trustee to Pay. — When the payee of a note secured by a deed of trust directs the trustee to sell the property, and pay over the proceeds to another, this constitutes a good equitable assignment of the note to that other. Lambert v. Jones, 2 Pat. & H. 144.
Order on Another to Deliver, — The delivery of an order to an assignee, drawn on a third person, directing such third person to deliver a certain .bond to this assignee, is tantamount to. the delivery of the bond, where this order is given by the defendant, and accepted by the plaintiff, in lieu of an actual-delivery of the bond. Daniels v. Conrad, 4 Leigh 401.
Certificate of Stock. — “It is well settled by the modern authorities, that choses in action not negotiable, and negotiable paper not endorsed, may be the subject of a gift, and that a delivery which vests in the donee the equitable title is sufficient without a complete transfer of the legal title. The delivery, therefore, of a certificate of stock, unendorsed, by the donor to the donee, with intent to transfer title by way of gift, is effectual as an equitable assignment, although no legal title passes for want of an endorsement and transfer on the books of the bank.” First Nat. Bank of Richmond v. Holland, June 20, 1901 (Va.), 39 S. E. Rep. 126.
Insurance Policy. — If the assured, in a policy on his own life, intending to make a valid gift thereof to a third person,' without consideration, executes an assignment thereof in duplicate, whereby the benefit of said policy is assigned to such third per.son, and delivers one of the assignments to the insurance company for its protection, and not as agent of the assignee, and fails to deliver either the policy or the assignment thereof to the assignee, this is an incomplete gift, and cannot be enforced by the assignee either at law or in equity. Spooner v. Hilbish, 92 Va. 334, 23 S. E. Rep. 751.
Military Certificate. — An assignment, by a person not the owner, of a lost military certificate, which is transferable by simple delivery, to a person for value and without notice, is a void assignment. Wilson v. Rucker, Wythe 296.
Draft in Attorney’s Hand. — A note or draft that is. in the hands of an attorney for collection may' be assigned by the party entitled to it, by transfer of the attorney’s receipt with the words : “I assign the within claim,” written on the back of it. Clarke v. Hogeman, 13 W. Va. 728. See Elam v. Keen, 4 Leigh 333. The latter case held that a valid gift of bond, which was in suit, might be made by the transfer of the attorney’s receipt.
Nonnegotiable Note. — The assignment of a nonnegotiable note may be by delivery and writing the name of the assignor across the back of the instrument. This does not transfer the legal title, but the assignee, the equitable owner, may sue in his own name by virtue of the statute. Merchants’ Nat. Bank v. Spates, 41 W. Va. 27, 23 S. E. Rep. 682.
3. OPERATIONS OF CERTAIN ASSIGNMENTS.
a. Order, on A Fund. — It is well settled that an order drawn on a particular fund, operates as an assignment of the fund not only as between the drawer and payee, but also as it regards the drawee, though not assented to or accepted by him, and will render him equitably answerable to the payee for a failure or-refusal to appropriate the fund to the payment of the drafts. First National Bank of Wellsburg v. Kimberlands, 16 W. Va. 588; Anderson v. De Soer, 6 Gratt. 363.
Acceptance Necessary at Law. — No action at law can be maintained against the drawee of a fund without his acceptance. Switzer v. Noffsinger, 82 Va. 518.
Potential Existence. — A fund on which an order is drawn must have a real or potential existence in the hands of the drawee. Stevenson v. Kyle, 42 W. Va. 229, 24 S. E. Rep. 886; First Nat. Bank of Wellsburg v. Kimberlands, 16 W. Va. 555.
An order on the whole or part of a fund is an assignment of the whole or part of such fund. Stevenson v. Kyle, 42 W. Va. 229, 24 S. E. Rep. 886; First Nat. Bank of Wellsburg v. Kimberlands, 16 W. Va. 555.
Actual Existence of Fund Unnecessary. —Moreover, it is a settled principle that one may draw on the credit of a fund which is not in existence, but which will arise at a future day, and such draft is an equitable assignment of that fund, and constitutes a lien on it in the hands of him who may have possession of it. The assignment is good, even though the funds, on which the orders are drawn, be uncertain and precarious. Thus, it will be seen that contingent interests and possibilities, are assignable in equity, though not in existence at the time. Brooks v. Hatch, 6 Leigh 534; First Nat. Bank of Wellsburg v. Kimberlands, 16 W. Va. 555; Huling v. Cabell, 9 W. Va. 525.
.Remedies in Case of Refusal to Accept. — It is well settled, that where one man having funds in another’s hands, draws on him an order, directing them to be paid to a third party, for value, such order, according to the doctrine of equitable assignment, will pass title to the payee. And in case the drawee refuses to accept the order as he may do, three courses remain for the holder to pursue; he may either return it, in which case the parties are in statu quo or he may sue the drawer upon it; or he may retain it, give notice to the person on whom it is drawn not to part with the fund, and sue in equity. S. V. R. R. Co. v. Miller, 80 Va. 821.
The payee of a draft or order, purporting to be for money lodged by the drawer in the hands of the drawee, belonging to such payee, may recover of the drawer, upon the drawee’s refusing payment (timely notice of such refusal being given) though such draft or order be not negotiable as a bill of exchange ; being drawn on a particular fund, — not in favor of the payee “or order,” nor in terms “for value received.” Jolliffe v. Higgins, 6 Munf. 3.
The payee of an order drawn upon the debtor of the drawer, may consider the order as an equitable *201 assignment of so much of the debt; and where a debt is due for land for which the vendor has a lien, the payee may file a bill to enforce that lien. Knisely v. Williams, 3 Gratt. 265.
Fund Must Be Designated. — An order drawn on a conditional assignee of a fnnd is not an equitable assignment, nor does the promise of an assignee of a fund to pay it when received to the assignor’s creditor constitute an equitable assignment of the fnnd, and, moreover, it does not create a lien on the fund. To constitute an equitable assignment, there must be an assignment or transfer of the fund, or some definite portion of it, so that the person owing the debt or holding the fund on which the order is drawn can safely pay the order, and is compellable to do so, though forbidden by the drawee. Hicks v. Roanoke Brick Co., 94 Va. 741, 27 S. E. Rep. 596, and cases cited.
b. Bills of Exchange. — a bill of exchange drawn by a legatee under a will upon the executors, for value received, directing them to pay to the order of the drawee a specific sum, the amount of the legacy, out of the funds in their hands, destined by the testator for the payment thereof, is an equitable assignment of the legacy. Anderson v. De Soer, 6 Gratt. 363.
When Accepted. — If a bill of exchange is drawn on one who accepts it on the faith of the funds of the drawer in his hands, he acquires an equitable interest in those funds, and is entitled to set off his liability on the acceptances, against his obligation to pay those funds, and to retain them pro tanto for his indemnity. Lambert v. Jones, 2 Pat. & H. 144.
Right of Holder of Bill of Exchange. — The holder of a bill of exchange, with several endorsements in blank, has a right to strike out the names of the endorsers subsequent to the first, and to write over the name of the first endorser an assignment to himself; for the bill, without such assignment, will be considered as his property, by his having it in his power to make it. Moreover, even after protest, the bill of exchange does not lose its negotiable character, and may be assigned, or transferred without assignment. Ritchie v. Moore, 5 Munf. 388.
c. Power of Attorney Coupled with an Interest. — “If it appears from a power of attorney that it is intended to give an authority coupled with an interest, it may operate as an assignment of a chose in action, but not otherwise.” 2 Am. & Eng. Enc. Law, 1067; Clayton v. Fawcett, 2 Leigh 19.
d. Mere Promise to Pay. — A mere promise to pay money out of a particular fund as soon as the debtor can procure its payment, does not.operate as an equitable assignment either at law or in equity. Eib v. Martin, 5 Leigh 141; Feamster v. Withrow, 9 W. Va. 296.
Agreement to Pay from Particular Fund. — An agreement by a debtor to pay a debt out of the proceeds of the sale of a particular piece of property does not constitute an assignment of, or lien upon, such proceeds, but is only a personal covenant of the debtor. Nor can such an agreement affect the purchaser of the property who was ignorant of it, nor an assignee of the bonds given for the purchase price who had no notice of it. Evans v. Rice, 96 Va. 50, 30 S. E. Rep. 463.
Agreement to Assign. — When a stranger pays the debt of another, he may take an assignment of it from the creditor, and enforce the debt against the debtor, and if, when he pays the amount, the creditor agrees to assign him the debt, though no assignment in writing is made, the stranger will be regarded in equity as an equitable assignee of the debt, and the transaction will be regarded as equivalent to a purchase of the debt. Crumlish v. Central Imp. Co., 38 W. Va. 390, 18 S. E. Rep. 459; Neely v. Jones, 16 W. Va. 625; Beard v. Arbuckle, 19 W. Va. 142. In the latter case a sheriff, with executions in his hands, paid the debt of the creditor, without any intention of extinguishing the debt, and the court held, that he would have the same rights and remedies against the debtor, that a mere stranger would have, whether he took an assignment of the judgment or not.
4. PARTIAL ASSIGNMENTS — RULE AT LAW— An order drawn on a particular fund or debt, for but a part of such fund or debt, will not be recognized in a court of law as an equitable assignment pro tanto, unless it is accepted by the drawee. First Nat. Bank of Wellsburg v. Kimberlands, 16 W. Va. 555.
Undivided Part of Chose. — A defendant executed an instrument reciting that, “in consideration of the confidence I have in, and the regard I have for, my nephews (the plaintiffs), I hereby give them one-fourth part of my personal estate, consisting of money due me from my several mercantile concerns, as well as private debts.” Held, that as the property attempted to be given was an undivided fourth part of certain choses in action, the plaintiffs took merely an equitable title in such part, not entitling them to any remedy at law. Hogue v. Bierne, 4 W. Va. 658.
Reason for Rule. — The reason for the rule is that, a single cause of action cannot be split up and assigned, at law, in parts without the consent of the debtor, because it may subject him to a multiplicity of suits, and to many embarrassments and responsibilities not contemplated in his original contract. Of course, if the debtor consents, such an assignment will be held good even in a court of law. St. Lawrence, etc., Co. v. Price (W. Va.), 38 S. E. Rep. 526. See also, Tyler v. Ricamore, 87 Va. 466, 12 S. E. Rep. 799.
Rule in Equity. — There is no objection, however, to the partial assignments of demands in equity, and it is well settled that such an assignment will operate in equity as an assignment pro tanto of the fund, though not accepted, and the rights of all may be adjudicated in one suit, hence, as to the defendant, the action is not split up. First Nat. Bank of Wellsburg v. Kimberlands, 16 W. Va. 555; St. Lawrence, etc., Co. v. Price (W. Va.), 38 S. E. Rep. 526; Tyler v. Ricamore, 87 Va. 466, 12 S. E. Rep. 799; S. V. R. R. Co. v. Miller, 80 Va. 821; Brooks v. Hatch, 6 Leigh 534.
Assignments in Toto and pro Tanto Contrasted. — If an order is drawn on a particular fund or debt for but a part of such fund or debt, though not accepted, the order will be an equitable assignment of the fund or debt pro tanto, and may be enforced in a court of equity ; but a court of law will not recognize such equitable assignment pro tanto by permitting the payer to bring suit at law in the name of the drawer against the drawee. But an order drawn on a particular fund for the whole thereof is a good equitable assignment of the fund, though the drawer does not accept it, and a court of law will so far extend to it its recognition as to permit the payee of such an order to institute a suit at law in the name of the drawer against the drawee. First Nat. Bank of Wellsburg v. Kimberlands, 16 W. Va. 588.
*202 Draft as Assignment Pro Tanto — Acceptance.—A draft on a particular fund or debt for but a part of such fund or debt, though not accepted, is an equitable assignment pro tanto thereof, but a court of law will not recognize such an assignment pro tanto by permitting the payer to bring a suit at law in the name of the drawer against the drawee. First Nat. Bank of Wellsburg v. Kimberlands, 16 W. Va. 555.
Check as Assignment Pro Tanto. — A check operates as an equitable assignment#?’# tanto from the time it is drawn and delivered, as between the drawer and the payee or holder. Hulings v. Hulings, 38 W. Va. 351, 18 S. E. Rep. 620; Brooks v. Hatch, 6 Leigh 534; Bell v. Alexandria, 21 Gratt. 6.
5. CONSIDERATION — It is said in 2 Min. Inst. (4th Ed.) p. 325, that a valuable consideration is an indispensable element to a valid assignment when the legal title does not pass; the reason given for that view is that an equitable assignment can only be given as an executory contract, and neither law nor equity will enforce an executory contract unless it be sustained by a valuable consideration. But see Elam v. Keen, 4 Leigh 333.
Consideration Need Not Be Adequate. — A bond may be assigned for much less than its nominal amount, and such assignment will be enforced in a court of equity as well as in a court of law, if no fraud or usury appears in the transaction. Kenner v. Hord, 2 Hen. & M. 14. See also, Hansbrough v. Baylor, 2 Munf. 36. In the latter case it *was held that if a bond be assigned without any consideration, but to be used as an article of traffic to raise money, the bona fide purchaser (though at a large discount) of such bond, without notice of the purpose for which it was executed, is entitled to recover the full amount.
Written Assignment Does Not Import Consideration. —A written assignment of a claim does not necessarily import a valuable consideration, and if it be fairly inferable from the circumstances, that the assignment was a gift, the assignor cannot be held responsible to make good the claim, to the immediate assignee or to his assignees for value. Wood v. Duval, 9 Leigh 6.
New Contract. — An assignment of a certificate of deposit, within the confederate lines, if made within federal lines, is a new contract, and is valid, if for valuable consideration. Morrison v. Lovell, 4 W. Va. 346.
Past or Present Consideration. — Whether the assignment of a bond was for a past or present consideration, the liability of the assignor is the same in either case. Barksdale v. Fenwick, 4 Call 492.
Consideration Valuable — Presumption of Assent.— The assent of absent persons to an assignment will be presumed unless their dissent be expressed, if the assignment be made for valuable consideration to them and he valuable to them, nor can we think that a distinction between a deed of trust to a trustee and an assignment direct to the creditor himself is founded in reason. 1 Barton’s Ch. Pr. (2d Ed.) 580.
Allegation of Consideration. — In assumpsit by the assignee against the assignor, the declaration should allege a consideration for the assignment. Hall v. Smith, 3 Munf. 550.
Bond. — Where a bond is transferred and delivered to another, it is a valid executed gift, though there was no consideration for the gift. Dunbar v. Woodcock, 10 Leigh 628.
Presumption of Consideration. — A share of the proceeds of a testator’s estate being bequeathed zo a feme covert, and her husband having assigned the same, a bill is filed by the assignee, alleging that the assignment was in consideration of $1,500; the executor and the feme both answer, but do not deny the consideration or call for proof of it; and the deed purports to be for the said consideration. Held, it seems that, there being no snch denial or call for proof, the deed is prima facie evidence of the allegation of the bill. Browning v. Headley, 2 Rob. 340.
Notice of Consideration. — la a suit in equity the plaintiff calls upon the defendant, as assignee of a bond, to say, whether he had notice of the consideration thereof, when he received the money due thereon; and, in answer, he says, that he had no such notice when he took the assignment. Held, the answer is not to be considered as admitting notice at the time of receiving the money. Edgar v. Donnally, 2 Munf. 387.
Burden of Proof. — The grantee in a deed for land, which is absolute on its face, but in truth a mortgage, having sold the land, and taken from the purchaser bonds for the purchase money, and a deed of trust to secure the same, and then having transferred the bonds to one who claims to be the assignee thereof for valuable consideration, but appears to have taken the assignment under circumstances calculated to throw strong suspicion on the transaction, held, it is incumbent on the assignee to prove that the assignment was for value. Breckenridge v. Auld, 1 Rob. 148; Barton v. Brent, 87 Va. 385, 13 S. E. Rep. 29.
6. NOTICE.
As between Successive Assignees. — It is unnecessary to give notice to the debtor, in order to perfect the claim of the first assignee of a chose in action against a subsequent assignee of the same debt. Tingle v. Fisher, 20 W. Va. 510.
Reason for Rule. — Notice need not be given to a subsequent assignee of a prior assignment, as neither of the assignees acquired by the' assignment a legal, but only an equitable title, and the maxim, qui prior est tempore potior est jure, applies. In order for this maxim to apply, however, both assignments must be valid, and the equities equal. Clarke v. Hogeman, 13 W. Va. 730.
As between Debtor and Assignee. — But to acquire a perfect title to a fund it is essential that notice of the assignment be given to the debtor; for, until notice, the assignment is subject to all the equities of the debtor against the assignor. Switzer v. Noffsinger, 82 Va. 518; Stebbins v. Bruce, 80 Va. 389.
Contra. — Though it is always the best and safest course to pursue to give notice to the debtor of the assignment, still notice is not at all material, and the assignment is good without it. Turk v. Skiles, 45 W. Va. 82, 30 S. E. Rep. 236; Clarke v. Hogeman, 13 W. Va. 730.
Legal Effect of Notice to Obligor. — The legal effect of notice to the obligor is not to oblige him to disclose to the assignee the defences he may have, but to preclude him from setting up any additional defence he may thereafter acquire against the assignor, for it has been held repeatedly that the statute- did not intend to abridge the rights of the obligor, nor to enlarge those of the assignee beyond suing in his own name. Stebbins v. Bruce, 80 Va. 400; Gordon v. Rixey, 76 Va. 704; Norton v. Rose, 2 Wash. 233; Garland v. Richeson, 4 Rand. 266; Feazle v. Dillard, 5 Leigh 30.
After a bona fide assignment of a bond, and notice thereof to the obligor, the latter cannot be restrained by an attachment in chancery at the suit of a creditor of the obligee from paying the debt to the assignee, notwithstanding the subpcena with the *203 usual endorsement by the clerk was served upon him, before he received such notice, and afterwards (but before he answered the bill) the court made an order “restraining him from paying the debt which he owed the defendant.” Tazewell v. Barrett, 4 H. & M. 259.
Notice in Case of Negotiable and Nonnegotiable Paper. — As regards notice there is a material distinction between a negotiable note, and choses in action, not negotiable. In the latter case notice must be given by the assignee to the debtor of the assignment to prevent him from making payment to the assignor, for without such notice, he has no reason to presume that the original creditor is not still his creditor, and payment to him would be according to his contract, and in the due and ordinary course of business. As the assignee’s title is only equitable, and enforceable in the name of the assignor, until notice, he has no equity agaiDst the debtor, which can be recognized and protected either by a court of law or equity. But if notice were required in case of negotiable instruments, the purpose l'or which they were created would be defeated and frustrated, as free circulation in the mercantile world is essential to the transaction of business, and that is the oñice that these notes perform, and that is what they were designed to do. Choses in action, not being designed for circulation, notice by the assignee is required to protect him against a payment to the original creditor. Davis v. Miller, 14 Gratt. 12, opinion of Moncure. J.
V. EFFECT OF ASSIGNMENT.
1. ASSIGNEE TAKES SUBJECT TO EQUITIES — It is settled law that the assignee of a nonnegotiable chose in action takes it subject to all the equities of the debtor against the assignor existing' at the date of the assignment; or which arise after the assignment and before the debtor has notice of it, and this is so though the assignee has taken the assignment for value, bona fide, and without notice of the equity. But the rule was not intended as a shelter for fraud, and so it applies only where the debtor has an equity of relief or ground of defence based on honest transactions between himself and the assignor. Picket v. Morris, 2 Wash. 255; Norton v. Rose. 2 Wash, 233; Feazle v. Dillard, 5 Leigh 30; Etheridge v. Parker, 76 Va. 247; Stebbins v. Bruce, 80 Va. 397; Commercial Bank v. Cabell, 96 Va. 552, 32 S. E. Rep. 53; Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 880; Goff v. Miller, 41 W. Va. 683, 24 S. E. Rep. 643; Stoner v. Harris, 81 Va. 456.
No assignment of a judgment will deprive a prior endorser of any rights and equities he may have or be entitled to. against a subsequent endorser. Conaway v. Odbert, 2 W. Va. 25.
The assignee of a nonnegotiable obligation can take no rights which his assignor did not possess, and generally make no defence he could not make. Prim v. McIntosh, 43 W. Va. 790. 28 S. E. Rep. 742.
Assignee in Same Situation as Assignor. — The assignee of a bond is not in a better situation than the assignor, for the holder can only sell and transfer such interest as he has. Thomas v. Linn, 40 W. Va. 123, 20 S. E. Rep. 880; Stockton v. Cook, 3 Munf. 68. See also, Meredith v. Salmon, 21 Gratt. 762.
A debtor of the bank purchasing debts due from the bank after a decree lor an account, is only entitled to stand in the shoes of his assignor, and receive his proportion of the assets realized. Finney v. Bennett, 27 Gratt. 365.
But an assignee of a bond taken in payment of the purchase money of land, although he may have notice of fraud in the sale of the land, cannot be placed in a worse condition than his assignor, the vendor, with reference to the payment of such purchase money. Highland v. Highland, 5 W. Va. 63.
In Board v. Wilson, 34 W. Va. 609, 12 S. E. Rep. 778, it is held : “The assignee of a single bill, which was executed for the purchase money of land, has the right to assert and enforce the vendor’s lien in a court of equity, whenever such vendor would be entitled to enforce the same.” See also, Poe v. Paxton, 26 W. Va. 607.
flay Be in Better Condition, — It will sometimes happen that the assignee will get a better title than the assignor had, by the operation of an estoppel. Thus, where one made his bond toSanother for the accommodation of the latter, in order that the bond mightbe assigned to a third person, to raise money for the obligee’s benefit, the obligor cannot, in a . suit brought against Mm by the assignee, set off a note for the same amount held by Mm against the assignor and executed for the very purpose of being used as a set-off, since this would be a fraud upon the assignee. Etheridge v. Parker, 76 Va. 247.
Unpaid Subscriptions. — The assignor of shares of stock is still liable for unpaid subscriptions, whether the installments accrue before or after assignment. Hamilton v. Glenn, 85 Va. 901, 9 S. E. Rep. 129.
Equities Must Be Clearly Established — Although the assignee of a bond, with or without notice, takes it subject to all the equity of the obligor, yet such equity must be clearly and manifestly established by proof, before it shall affect an assignee without notice ; especially if the obligor, after the assignment, promises payment of the full amount of the bond to the assignee. Mayo v. Giles, 1 Munf. 533.
What Equities May Be Pleaded. — “The action brought in the name of the assignor for the benefit of the assignee is open to all equitable defences, but only to those which are equitable; that is, the debtor may make all defences which he might have made if the suit was for the benefit of the assignor, as well as in Ms name, provided these defences rest upon honest transactions, which took place between the debtor and the assignor before the assignment, or after the assignment, and before the debtor had notice or knowledge of it. The same rule holds as to the equities existing between an assignor and Ms assignee in respect to a chose in action held for value and without notice by a subsequent assignee. The latter takes the exact position of his vendor (assignor),"etc. Prim v. McIntosh, 43 W. Va. 790, 28 S. E. Rep. 743.
Purchase Money Bonds. — The assignee of a purchase money bond secured by a vendor’s lien, has all the equities of the obligor against the assignor. Russell v. Randolph, 26 Gratt. 705.
a. Latent Equities of Third Persons. — Though it is well settled that the assignee of a bond takes it subject to any equity of the obligor, that attached to it in the hands of the obligee, still he does not take it subject to any equity ol a third person not party to the bond, of which he has no notice. Moore v. Holcombe, 3 Leigh 597; Hunter v. Lawrence, 11 Gratt. 111; Broadus v. Rosson, 3 Leigh 12; Stoner v. Harris, 81 Va. 456.
Private Agreement. — One who lends his credit to another in the form of a note, to be sold to raise funds, cannot set up against the assignee of that note, any private agreement unknown to the assignee, *204 as a defence to the payment of that note. Etheridge v. Parker, 76 Va. 252.
Secret Liens. — An assignee cannot be affected by a latent equity in the hands of a third person of which he has no notice, and a secret implied lien cannot be set up against a bona fide assignee of the bonds. Gordon v. Rixey, 76 Va. 704; Moore v. Holcombe, 3 Leigh 597.
The right of a bona fide assignee, for valuable consideration, of a note negotiable at the bank of Virginia, to recover against the maker and indorsers of such a note, is not to be affected by any equity, of which he had no notice when he received it. McNiel v. Baird, 6 Munf. 316.
2. WHAT PASSES BY ASSIGNMENT.
a. Assignment op the Chose Carries the Security. — It is a well-settled principle of law that the assignment óf a chose in action or a debt, by force of law as an incident thereto, carries the deed of trust or mortgage which secures the debt. The same principles apply to the vendor’s lien, resulting from the retention of the legal title. Of course the above rule applies only in the absence of any express stipulation to the contrary, or a fair and reasonable implication that the benefit of the lien was not to pass. Tingle v. Fisher, 20 W. Va. 506; Gwathmeys v. Ragland, 1 Rand. 466; Gregg v. Sloan, 76 Va. 499; McClintic v. Wise, 25 Gratt. 448; Stimpson v. Bishop, 82 Va. 200; Machir v. Sehon, 14 W. Va. 777; Camden v. Alkire, 24 W. Va. 680; James v. Burbridge, 33 W. Va. 276, 10 S. E. Rep. 397; Grubbs v. Wysors, 32 Gratt. 127, 131; Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 878; Jenkins v. Hawkins, 34 W. Va. 799, 12 S. E. Rep. 1090.
Assignment of Bond Carries Trust Deed, — The assignment of a bond carries with it the trust deed and vendor’s lien on the property securing the bond. Lightfoot v. Green, 91 Va. 513, 22 S. E. Rep. 242; Jenkins v. Hawkins, 34 W. Va. 799, 12 S. E. Rep. 1090; Schofield v. Cox, 8 Gratt. 533.
Assignment of Note Carries the Security. — The assignment of a purchase money note carries with it the lien given in security thereof. Briggs v. Enslow, 44 W. Va. 499, 29 S. E. Rep. 1008.
Assignment of Note Carries Remedies. — The assignment of a promissory note, carries with it all the remedies of the assignor, including the right to attack a fraudulent conveyance, because “when choses in action could not be assigned, because to allow their assignment tended to beget maintenance and champerty, there may have been something in the contention of the appellants that the assignment of the notes to the plaintiff did not carry with it the right to attack the fraudulent conveyance, though equity limited the restriction long ago; but many, many years ago, the Virginia legislature made debts assignable, and the law is well settled that the assignee can sue in his own name, or he can sue in the name of the assignor, without power in the assignor to prevent him.” Billingsley v. Clelland, 41 W. Va. 234, 23 S. E. Rep. 820.
The better rule seems to be, however, that the assignment of a promissory note carries with it all the remedies of the assignor, including the right to successfully attack a fraudulent conveyance, and if the assignor was not entitled to such remedy he could not transfer such right by assignment. Prim v. McIntosh, 43 W. Va. 790, 28 S. E. Rep. 742.
Assignment of the Debt Carries Lien. — When the debt is assigned to a third person, the assignment carries with it the lien, which is a mere incident to the debt. Gordon v. Rixey, 76 Va. 694.
Assignment “Without Recourse.” — Upon the question whether the vendor’s implied equitable lien for purchase money would pass by an assignment of the debt, the authorities are conflicting. Although some of the cases decide that an assignment of the debt, even without recourse, carries with it this lien, like any other lien; but the majority of the cases, if not the weight of authority, seems to be decidedly the other way; at least unless it appears that the assignor intended to assign the lien as well as the debt; in which case it seems that both would pass to the assignee, even though the assignment were without recourse to the assignor. When, however, the assignment is not without recourse, the weight of authority is that the lien continues in full force notwithstanding the assignment, and passes thereby to the assignee. Mayo v. Carrington, 19 Gratt. 120. See Jenkins v. Hawkins, 34 W. Va. 799, 12 S. E. Rep. 1090.
If a vendor of land, retaining the title, assigns one of the bonds given for the purchase money, and brings his ejectment against the purchaser, and recovers the possession, he recovers in subordination to the assignee. The assignee by the assignment having acquired the benefit of the lien, whatever itmay be, is entitled to all the remedies of the vendor to enforce it. He cannot be deprived of any of these remedies by any act of the vendor. If the bond in the hands of the assignee is not paid, he may go into a court of equity to enforce the lien. McClintic v. Wise, 25 Gratt. 459.
Assignment of a Mortgage. — Since the possession of the mortgagor, continuing by the mortgagee’s permission, is to be considered as the possession of the mortgagee, it follows that where the latter could recover in ejectment, his deed assigning the mortgage will enable the assignee to recover in like manner. Chapman v. Armistead, 4 Munf. 382.
Assignment of Debt without Mortgage. — As the debt is the principal thing, and an assignment of it carries with it the mortgage, therefore so long as a recovery on the note or bond given for the debt is not barred, the right to enforce the lien of it created by the mortgage or trust deed on the land continues and may be enforced by suit in equity, a mortgage being regarded merely as a security for the debt. Camden v. Alkire, 24 W. Va. 680; Hale v. Pack, 10 W. Va. 145.
Assignee of a Vendor’s Lien, — An assignor of a chose in action, secured by a vendor’s lien reserved on real estate, cannot sue in equity to enforce the lien for the benefit of his assignee. The assignee of a vendor’s lien is an assignee of a mere chose in action, and the assignment carries no interest in the land upon which the debt is secured. Penn v. Hearon, 94 Va. 773, 27 S. E. Rep. 599.
Mutual Assurance Society. — If buildings insured in the Mutual Assurance Society against fire, are mortgaged, the policy of insurance is ipso facto assigned to the mortgagee, for it is a covenant real, running with, and entered into, for the purpose of upholding the estate. Farmers’ Bank v. Mut., etc., Society, 4 Leigh 69.
Question of Intention. — Where, upon the question of whether the assignment of a bond secured by a deed of trust to the trustee was intended by the payee to pass the ownership of the bond, the evidence is conflicting, the decree of the circuit court will be affirmed. Ayres v. Wells (Va.), 1 Va. Dec. 692, 9 S. E. Rep. 326.
Conflict of Laws — Compulsory and Voluntary Assignments. — The general rule is well established that a *205 bona jide and voluntary assignment of personal property and dioses in action wherever situated or found pass to the assignee at the time of the assignment, and so will have priority over subsequent liens, although neither such liens nor the debtors (in case of chose in action), had notice of the assignment at the time the lien was created, unless it comes in conflict with some positive or customary law of the state or place where such property or choses in action may be located or found. But it is equally well established that coercive and involuntan' assignments do not operate beyond the territory and jurisdiction of the state or sovereign under whose laws such compulsory assignment was made. Bank v. Gettinger, 3 W. Va. 316; Harrison v. Bank, 9 W. Va. 431.
3. RIGHTS AND LIABILITIES OF PARTIES.
a. Assignor Loses Control by Assignment. — The assignor of a judgment, or the claim on which it is founded, upon which judgment was recovered, has no control over it, nor of an execution issued thereon, taken out by the assignee, after a valid assignment is once made of it, and the assignor has no further interest in the claim; and of course no subsequent assignment of the judgment, recovered on such claim, can give any right to such subsequent assignee. In other words, after an absolute bona jide assignment for valuable consideration of all the assignor’s interest in a chose in action, the assign- or’s control over it ceases immediately. Clarke v. Hogeman, 13 W. Va. 718; Mackie v. Davis, 2 Wash. 230.
Assignor Cannot Interfere with Suit. — “And now, in all cases, the courts of law in England protect the rights of an assignee, suing in the name of the assignor, so far as not to permit the assignor to dismiss the suit or release the action.” Garland v. Richeson, 4 Rand. 266. opinion of Green, ,T.
Assignee Hay Sue for Specific Performance. — The assignee for value of a note given for the purchase money of land, may maintain a suit against his assignor, the vendor and the vendee, for a specific performance of the contract, in a case proper for such relief, for his benefit; and obtain satisfaction of the amount due him by subjecting the land to sale for the payment thereof. Hanna v. Wilson, 3 Gratt. 243.
Assignees Severally Liable. — Where a purchaser of land from a guardian executed his bond for deferred payments in such proportions as the guardian required, with a view to enable the guardian to transfer the bonds to others for his own purposes, it was held that if the assignee proved unable to pay, the purchaser of the land was bound to reimburse the sureties on the guardian’s bond, or to pay the amount to the ward in case the money could not be made out of the sureties or the assignees, each of the said assignees being severally liable for what he received. Broadus v. Rosson, 3 Leigh 25; 2 Barton’s Ch. Pr. (2d Ed.) 743.
Neither bills of review nor petitions for rehearing lie for assignees. Armstead v. Bailey, 83 Va. 242, 245, 2 S. E. Rep. 38.
Set-Off. — A is indebted to B by a bond payable January 1820, which, after it is due, is assigned by B to C ; but before notice of assignment, A becomes surety for B in a bond to D payable February 1822; then B becomes insolvent. Held, A is entitled, in equity to set off the amount of the bond in which he is B's surety to D, though not yet due (unless he is indemnified against his suretyship), against his own bond to B, in the hands of C his assignee. Feazle v. Dillard, 5 Leigh 30.
Declarations of Assignor after Assignment. — It is well settled that the declarations of an assignor after assignment, are inadmissible in evidence against his assignee. Brock v. Brock, 92 Va. 173, 23 S. E. Rep. 224; Barbour v. Duncanson, 77 Va. 76; Smith v. Betty. 11 Gratt. 752; Daily v. Warren, 80 Va. 512; Hodnett v. Pace, 84 Va. 873, 6 S. E. Rep. 217.
Whether Oral or Written. — Declarations, either oral or written, of an assignor, that a chose in action has been paid are inadmissible, unless made before the assignment. Ginter v. Breeden, 90 Va. 565, 19 S. E. Rep. 656; Lewis v. Long, 3 Munf. 136.
Acknowledgments of Payment. — The acknowledgments of an assignor that he has been paid his debt are no evidence against the assignee, unless they were made anterior to the assignment, and it is equally true, whether his acknowledgment is written or oral, and the onus probandi is on the debtor. Moreover a receipt is nothing but a written acknowledgment, and the date of it is not even prima facie presumed to be true, for if this were true every paper would prove itself, and the assignee would be put at a decided disadvantage, as the parties know the true date, whereas the assignee cannot know. Wilcox v. Pearman, 9 Leigh 147.
Statement after Assignment by Obligee. — The assignee being absent, statements made by the obligee of a title bond, after its assignment, detrimental to the rights of the assignee, are certainly not competent evidence as against him, and cannot affect his rights. Coldiron v. Asheville Shoe Co., 93 Va. 364, 25 S. E. Rep. 238.
Statements after Assignment as to Offsets. — Statements made by an assignor of a common-law instrument to the holder after the assignment, that there is no offset or objection to the said bond, nor anything to affect his liability as assignor, is a mere nudum pactum, and not binding, and hence will not be sufficient consideration to support an action of assumpsit by the holder against the assignor. Hopkins v. Richardson, 9 Gratt. 485.
b. Right to Go against Assignor.
bb. Warranties of Validity Generally. — By an assignment of a judgment, even though it be without recourse, the assignor warrants that it is what it purports to be, that he has done and will do nothing to prevent the assignee from collecting it, and that it has not been paid; but he is not answerable for the insolvency of the judgment debtor. The term “without recourse” does not relieve the transaction of such implied warranty. Findley v. Smith, 42 W. Va. 299, 26 S. E. Rep. 370.
Assignment of Invalid Claim — Statute of Limitations. — Where there is an assignment of an invalid county order, there is a breach at once of the implied warranty that it is a valid subsisting debt, and the right of action accrues immediately to the assignee to recover back the money paid by an action for money had and received. The statute of limitations in such case is five years, and it begins to run from the date of the breach of such implied warranty of the validity of the instrument assigned, unless something appears to avoid the commencement of the running of the statute at that date, but ignorance or neglect of one’s right will not avoid its running, unless such ignorance or neglect was due to the conduct of the assignor. Merchants’ Nat. Bank. v. Spates, 41 W. Va. 27, 23 S. E. Rep. 682.
Reversal of Assigned Judgment. — if a judgment of a county court be assigned, and afterwards re *206 versed by the superior court of law, the assignee may thereupon sue the assignor, without carrying the case to the court of appeals. Arnold v. Hickman, 6 Munf. 15.
Forged Instruments. — Where an agreement under seal for the conveyance of land was assigned without recourse, accompanied by the delivery of a paper purporting to be a grant, together with certificates as to title, which papers proved to be forgeries, it was held that the assignor was not liable, there being no proof of fraud or knowledge of fraud on his part. Crawford v. M’Donald, 2 H. & M. 189.
Warranty of Debtor’s Insolvency. — It is well settled that the obligation of the assignor is that he warrants the solvency of the debtor and the existence and justice of the debt. Upon the assignee using or exercising due diligence to collect the debt, and failing, because of the inability of the debtor to pay, or because the debtor shows that he ought not, in law, to be required to pay the same, and thus defeats a recovery, then the law raises an implied promisé, on the part of the assignor, to repay the price which he received for it. A suit, however, is not always necessary to entitle the assignee to recover back the money paid upon the assignment, but he must show that a suit would be unproductive of good, and that the assignor has suffered no loss for want of such suit; such as the notorious insolvency of the debtor or some reason why a judgment could not be had. Slifer v. Howell, 9 W. Va. 397.
Implied Warranties. — Where a nonnegotiable note is assigned, calling for the payment of money, the assignor, by writing his name across the back and delivering it, warrants by implication, unless it is otherwise agreed, that it is a valid and subsisting debt, that the maker of the instrument is solvent, or will be when the claim falls due, and his right to assign. Merchants’ Nat. Bank v. Spates, 41 W. Va. 27, 23 S. E. Rep. 681.
cc. Failure to Collect from Obligor. — In the absence of proof of an express agreement to the contrary, the assignment of a bond imports a guarantee that the assignee shall receive the full amount of the bond from the obligor (when the money paid for the assignment was the face value of the bond), and further imports the right of the assignee to resort to the assignor for any part thereof which he shall fail to collect from the obligor with the exercise of due diligence. Peay v. Morrison, 10 Gratt. 149; Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 878; Jenkins v. Hawkins, 34 W. Va. 799, 12 S. E. Rep. 1091.
Implied Promise by Assignor. — The law raises an implied promise by the assignor to the assignee, that if the assignee (using due diligence), fails to recover of the obligor or maker, the assignor will repay him the consideration which he received for the paper. This implied promise, however, is decided to extend only to the immediate assignee, and to give to no other a right of action against the assignor, so that no other assignee could sue a remote assignor. Caton v. Lenox, 5 Rand. 42.
Undertaking of Assignor. — In a note by the editor (appended to Long v. Pence, 93 Va. 584, 25 S. E. Rep. 593), in 2 Va. Law Reg. 612, it is said: “The assignor is not bound by the note or by his assignment of it, in the absence a of special agreement to that effect, to pay it, as in the case of the endorser of a negotiable note. His undertaking is to refund or repay the value of the consideration he has received for the assignment, if the assignee, by the exercise of due diligence, cannot recover the debt assigned. The implied contract between the assignor and assignee of a nonnegotiable note is different and quite distinct from the contract between the maker and payee of such note; hence the waiver of exemption as to the obligation of the note does not embrace the obligation arising out of the assignment. This was decided by the court. The same rule would apply to the assignment of a bond or any other nonnegotiable instrument. The distinction pointed out is of much importance in business transactions.”
Covenant against Liability. — A bond may be assigned in general terms with a verbal agreement that the assignor shall not be responsible; and, thereupon, he will not be responsible even to a subsequent assignee having notice of such agreement. Stubbs v. Burwell, 2 H. & M. 536.
But in the absence of an express stipulation to the contrary, the assignor’s liability is the same whether the assignment be general or special. Goodall v. Stuart, 2 H. & M. 105.
Assignment without Recourse. — An assignment without recourse of a bond exempts the assignor from all liability by reason of the insolvency of the obligor, and if the bond is genuine and the amount of money it calls for was owing and unpaid at the time of the assignment, the assignee is not entitled to recover the bond by reason of any failure or inability on his part to make the money. He takes upon himself all risk of collecting the money, providing it was in fact what it seemed to be, a genuine, valid, subsisting debt. Houston v. McNeer, 40 W. Va. 365, 22 S. E. Rep. 80; McSmithee v. Feamster, 4 W. Va. 673.
Fraud by Assignor. — Where a bond was assigned without recourse, and the assignee sued to recover his money back, on the ground of fraudulent representation, it was held that to avoid such contract the-representation must be. of a material fact and be false within the knowledge of the assignor, and be made with intent on his part that the assignee should act upon it, and the assignee must have, in ignorance of its falsity, relied upon it and been thereby misled to his injury and damage. Houston v. McNeer, 40 W. Va. 365, 22 S. E. Rep. 80.
One who, knowing an obligation to be void for usury, transfers it, without disclosing the defect, is. guilty of a deceit which renders him liable to the-transferee. Fant v. Fant, 17 Gratt. 11.
Proof of Fraud. — A subsequent assignee, who asserts that he took his assignment for value, without notice of the prior assignment, and, moreover, charges the previous assignment with being fraudulent, is, of course, bound to prove it, as it is his. own case. Daily v. Warren, 80 Va. 512.
Taking a Forthcoming Bond. — The taking of a forthcoming bond, on a judgment and execution against, the obligor of an assigned bond, is not such a satisfaction of the judgment, as will preclude the assignees from having recourse against the assignors. Smith v. Triplett, 4 Leigh 590.
ccc. Diligence — General Rule. — The general rule is,, that the assignee of a bond or promissory note-must use due' diligence to recover the amount of it. from the obligor or maker, before he can resort to the assignor. A suit is in general necessary, but there are circumstances which will excuse the assignee from bringing suit. Caton v. Lenox, 5 Rand. 31; Mackie v. Davis, 2 Wash. 219; Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 880.
Upon an assignment for value, the presumption is that the assignor is'liable to the assignee if, by the: *207 exercise of due diligence, the money is not collected from the obligor. Gordon v. Rixey, 76 Va. 706.
Statute of Anne. — Antecedent to the statute of Anne, the assignee could recover against the assignor if payment of the note was demanded from the maker and he refused. And in this country, as bonds and notes are governed by the same principles, the above-stated rule will apply to bonds also. Mackie v. Davis, 2 Wash. 219, 230.
Suit Must Be Sufficient. — It is not sufficient for the assignee of a promissory note to bring a suit against the maker, which fails on account of the informality in the proceedings; but he mnst bring a sufficient suit, before he can charge the assignor. Bronaugh v. Scott, 5 Call 78.
The assignee of a note of hand, mnst sue the maker, before he can resort to the assignor. Lee v. Love, 1 Call 497. See also, Barksdale v. Fenwick, 4 Call 492.
Duty of Assignee When He Does Not Sue. — If an assignee attempts to excuse himself for not suing, for examide, relying on the fact that the instrument assigned is invalid, then he should immediately demand the money from the assignor with an offer to return the instrument, that the assignor might take measures to recover from the maker. Merchants’ Nat. Bank v. Spates, 41 W. Va. 27, 23 S. E. Rep. 683; Wilson v. Barclay, 22 Gratt. 534, approved in ahoye case.
Various Excuses for Not Bringing Suit, — There are many cases in which no suit need be brought against the maker, as where the note was a forgery, and the assignor has received the money from the assignee, or where the assignor practiced a fraud upon the assignee, or where exchange notes were given between the maker and assignor, as a consideration for each other, and the note given by the assignor has never been paid, nor sued upon. Caton v. Lenox, 5 Rand. 31.
Insolvency. — The assignee cannot recover merely on default of the debtor, but only after legal recourse against him has been exhausted, unless It appear that before the bond fell due the debtor became insolvent, or unless it appear from some 'cause that a suit against him would be unavailing. Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 878; Drane v. Scholfield, 6 Leigh 390. See Dunn v. Price, 11 Leigh 210.
When the obligor of a bond becomes insolvent before the bond becomes due. a suit against him is unnecessary to establish the right of the assignee to recover of the assignor, as such a suit against the obligor would be unavailing. Peay v. Morrison, 10 Gratt. 149.
The assignee, as a general rule, cannot recover against the assignor the amount paid for the assignment unless due diligence is used without effect against the debtor. But it is never necessary to pursue the debtor, if such pursuit would be unavailing by reason of the debtor’s insolvency at the time of the assignment, or when the instrument falls due, or if it be null and void. Merchants’ Nat. Bank v. Spates, 41 W. Va. 27, 23 S. E. Rep. 682.
Insolvency at Time of Assignment. — It was held in Coiner v. Hansbarger, 4 Leigh 452, that where a bond, payable on demand, was assigned for valuable consideration, and the obligor was insolvent at the time of the assignment, then it is not necessary that the assignee should bring suit on the bond against such obligor, in order to entitle him to recourse against the assignor, but the latter is immediately liable to the assignee upon the contract of assignment.
Notorious Insolvency of Maker. — The assignee of a bond or note is not bound to sue the maker, if he be notoriously insolvent, before he can resort to the assignor. Saunders v. Marshall, 4 H. & M. 455.
It was held, in Broun v. Hull, 33 Gratt. 23, that “as assignees, plaintiffs are under no obligation to make any demand upon the maker, and give notice to the defendant of nonpayment, but they are bound to exercise due diligence in suing the maker, obtaining judgment and execution, which is a condition precedent to their right upon the defendant, unless, indeed, the makers were notoriously insolvent. The defendants, moreover, had the right to show that the plaintiffs had not used due diligence and that the maker was not notoriously insolvent.”
“An assignor is not liable as an endorser, of paper not negotiable according to the laws of this state, although it may have been negotiable under the laws of the placewhere it was made. Therefore, in order to make an assignor liable for its payment, it must be averred and shown that the maker was insolvent at the time it became due, or at the time of the assignment, if assigned after it became due, or that due diligence has been used to collect it, or that it could not have been made by the use of due diligence. Nor can there be a recovery under such circumstances under the common counts in assumpsit.” Nichols v. Porter, 2 W. Va. 13. The statement in Nichols v. Porter, that recovery cannot be had under the common counts in assumpsit, has been overruled in Hughes v. Frum, 41 W. Va. 445, 23 S. E. Rep. 605.
Express Agreement by Assignor. — An express agreement by the assignor of a bond, to be responsible for the payment thereof, should the obligor prove insolvent, does not vary the nature of the undertaking, nor affect the assignor’s liability, as, without an express stipulation to the contrary, he would have been so liable by mere operation of law. Goodall v. Stuart, 2 H. & M. 105.
Bankruptcy — It is generally necessary for the assignee of a promissory note to sue the drawer, in order to charge the endorser, but to this rule there are exceptions, where the plaintiff can show a discharge of the drawer under the former bankrupt laws of the United States, or the insolvent law of the state or that the drawer was actually insolvent, so that a suit would have been wholly unavailing. Brown v. Ross, 6 Munf. 391.
As a general rule the assignee cannot recover from the assignor the amount paid for the assignment, unless due diligence is used without effect, against the debtor; but it is in no case necessary to pursue the debtor, if it be clear that such pursuit would be unavailing, as if the obligor being insolvent at the time of the assignment, or when the note falls due, or where the note is a forgery, or where the maker is a married woman. Morrison v. Lovell, 4 W. Va. 346.
Pursuit of Maker Out of State. — The weight of authority and reason seems to sustain the contention that an assignee is not bound to pursue the maker out of the state, in order to constitute due diligence on his part, but if he elects to leave the state and sue the maker, he is bound to use due diligence, and if he holds up a claim for a long time and allows the maker to become insolvent, then the assignor will be absolved. Drane v. Scholfield, 6 Leigh 386.
Writ Must Be Produced. — in an action by an assignee against an assignor of a bond, the point in dispute *208 being whether the assignee has used due diligence in suing the debtor, if the plaintiff produce a transscripfof the proceedings'in á suit which he brought against the obligor, showing the time when the declaration was filed, but not the date of the writ, and the defendant demur to the evidence, the court not interfering nor requiring a copy of the writ to be produced; such demurrer should be set aside and a venire de novo awarded. Taliaferro v. Gatewood, 6 Munf. 320.
Assignee Must Pursue Security with Diligence. — It is a perfectly well-settled rule of law that the assignee must use due diligence to make the money out of the maker or obligor before he can come against the assignor, and where the debt assigned is secured by a specific lien, it is the duty of the assignee diligently to enforce such lien before he can have any recourse against the assignor. If he fails to pursue this course, it is incumbent upon him to show clearly that the security was worthless, and that no loss or damage has resulted from his lack of diligence. The assignee cannot delay' upwards of two years, without any excuse, to pursue the security. Carper v. Marshall, 98 Va. 438, 36 S. E. Rep. 526; Wilson v. Barclay, 22 Gratt. 541, approved.
Judgment upon an Award. — A suit by an assignee of a bond against the obligor being referred to arbitration, the arbitrators find the debt to have been discharged by payments to and set-offs against the assignor, and make an award in favor of the obligor, upon which judgment is entered, whereupon an action is brought by the assignee against the assignor. Held, that though the assignor is at liberty to controvert the facts, found by the award, and show that the judgment is erroneous, yet, until the contrary is shown, the judgmentwill be presumed to be right, and is sufficient therefore to establish the liability if the assignor, and to support an assumpsit founded on such liability. Scates v. Wilson, 9 Leigh 473.
Return of “No Effects.” — A return of “no effects,” by a sheriff on an execution in favor of an assignee of a bond against the obligor is generally held sufficient to charge the assignor; so in an action against the assignor, evidence of the obligor’s insolvency is inadmissible. Goodall v. Stuart, 2 H. & M. 105; Minnis v. Pollard, 1 Call 227. See also, Hooe v. Wilson, 5 Call 61.
But in a suit by the assignee against the assignor of a bond, if it appear that after the judgment against the obligor, a fieri facias was returned nulla bona, and that afterwards the assignee sued out a capias ad satisfaciendum, upon which the return was “executed on the body of the defendant, who stands committed to the prison bonds, as per bond,” etc., the plaintiff cannot recover but must be considered as having brought his action against the assignor prematurely ; because, for aught that appears in the records, the obligor is still in custody under the ca. sa., or may have paid the debt. Johnston v. Hackley, 6 Munf. 448.
The assignee of a bond cannot recover against the assignor upon a declaration stating that the plaintiff brought suit and obtained a judgment which was enjoined upon a bill claiming equitable discounts, on account of certain dealings and transactions between the obligor and the assignor before the assignment; and that the plaintiff was thereby entirely debarred from collecting the debt; without stating that the injunction was made perpetual, or what proceedings took place thereon. McClung v. Arbuckle, 6 Munf. 315.
Return of Nulla Bona Conclusive Evidence of Insolvency. — in an action between the assignees and assignors the sheriff’s return of nulla bona on the execution against the obligors in the forthcoming bond, though amended after the assignees’ action and five years after the return, so as to show the insolvency of both the surety and principal, is conclusive evidence of such insolvency. The insolvency of the debtors might be proved by other evidence, but the assignees have a right to the conclusive evidence of the sheriff's return. Smith v. Triplett, 4 Leigh 590.
When assignees have recovered judgment on an assigned bond, and sued execution against the obligor, and that execution is returned nulla bona, they are entitled to recourse against the assignors, and it is no defence for the assignee to show neglect or malfeasance in the sheriff; the assignors, as parties injured may sue the sheriff for such misconduct;, the assignees are not bound to sue him, before they can have recourse against the assignors, upon the contract of assignment. Smith v. Triplett, 4 Leigh 590.
Allegation of Return “Nulla Bona” Sufficient. — When a declaration against an assignor sets forth the return of nulla bona against the obligor, which is prima facie evidence of his inability to pay, then it is unnecessary to state in the declaration that the obligor was insolvent. Barksdale v. Fenwick, 4 Call 492.
Pursuit of Maker’s Bail. — when the assignee has ascertained the insolvency of the maker, that is all he is required to do, so as to have recourse to his assignor, and he need not pursue his bail to insolvency before going against the assignor, for if this latter were necessary it would likewise be necessary in all cases to ascertain by suit, whether the maker could give bail. Caton v. Lenox, 5 Rand. 48.
The assignee of a bond may recover of the assignor, after suing the obligor and obtaining a judgment and execution with a return of nulla bona; notwithstanding his attorney directed that appearance bail be not required of the obligor. Harrison v. Raines, 5 Munf. 456.
What Is Due Diligence. — To charge either the guarantor or assignor due diligence must be used. The assignee being entitled to recover of the assignor on the grounds of failure of consideration, it will devolve on him to show (unless it be otherwise arranged by agreement) that he used due diligence to collect the debt of the debtor,' and used it in vain. What is due diligence is not susceptible of a precise definition. An immediate suit duly followed up by an execution, etc., is always due diligence, even though it may not be the surest way to make the money. Immediate suit, however, is not indispensable if the assignee can show that' by reason of the debtor’s insolvency or for other reasons a suit' would be un-' availing. Payne v. Huffman, 98 Va. 372, 36 S. E. Rep. 476; 3 Min. Inst. (4th Ed.) 437.
Depends on Circumstances. — But what is due diligence on the part of an assignee depends, very often, on circumstances. Barksdale v. Fenwick, 4 Call 492.
Laches. — Where an assignment of money has been made by an order upon another, which order is accepted, it is the duty of the assignee to use due diligence to collect the money from the acceptor, and upon a failure, to give notice to the drawer and assignor so that they may take proper steps for their security, and they cannot resort to the assignor and drawer, after they have been doing *209 nothing for years to enforce their right against the acceptor. Wood v. Duval, 9 Leigh 6.
Delay of Two Years. — Where an assignee delays for two years to sue the maker of a note it is not such diligence as the law says an assignee must use. In such a case he cannot recover against the assignor, where there is no proof of the maker’s insolvency at the time the note matured or shortly thereafter. Thompson v. Govan, 9 Gratt. 695.
Waiver of Diligence. — The necessity for using diligence to enforce the payment of an assigned bond, may be waived by the terms and conditions expressed with sufficient clearness in the assignment. Lightfoot v. Green, 91 Va. 513, 22 S. E. Rep. 242.
In general the guarantor contracts to pay if, by the exercise of due diligence, the debt cannot be made out of the principal debtor. Still if it appears to have been the intention of the guarantor to make himself liable on the default of the principal debtor, without the use of the ordinary means to compel payment by him, or proof of his insolvency, he will beheld liable accordingly. His contract, in such case, is a guaranty of payment, or of punctual payment, by the principal debtor, and not merely a guaranty of solvency, or of ultimate payment, after the usual means of enforcing if are employed. Arents v. Com. 18 Gratt. 750, 770.
Waiver May Be Proven by Parol. — After assignment certain bonds are placed in the hands of an attorney for collection, by the assignee, but with instructions to sue on them or not just as the assignee directed, and these instructions the attorney followed. Upon the attorney’s being offered as a witness, an objection was raised that he was incompetent to prove any matter as excuse for due diligence, because it would vary the contract which the law implies that the assignee will use due diligence. Jfeld, the rule as to the use of due diligence, is intended for the benefit of the other assignor, and may be waived by him, as was done in this case, and the waiver may be proven by parol testimony. The assignor will still be liable to the assignee, although the debt may have been lost by the failure to use diligence. Hall v. Rixey, 84 Va. 790, 6 S. E. Rep. 215 See also, McLaughlin v. Duffield, 5 Gratt. 133.
Burden of Proof. — “In questions concerning due diligence, the burden of proving it is always upon that party whose interest it is to establish it. ” Drane v. Scholfield, 6 Leigh 393.
Diligence Question for Jury. — What is due diligence in the assignee of a bond or promissory note, is a question to be decided by the jury. Bronaugh v. Scott, 5 Call 78; Mackie v. Davis, 2 Wash. 219; Barksdale v. Fenwick, 4 Call 492.
Grounds for Recovery When Consideration Fails.— In an action by an assignee against his assignor he is entitled to recover, not on the ground of the assignment, for the transferror of the bond is equally liable by sale of the bond, even without assignment, but on the principles of natural justice that if a man buys of another that which afterwards turns out to be worthless, he is bound to refund the price. The consideration having failed, he must pay back the money. Hence, the assignor is never liable for more than the price paid by the assignee for the bond, with interest and the cost sustained in prosecuting the obligor. Moreover, the assignee who sues the remote assignor can recover from him only so much as he has received from his immediate assignee. Goff v. Miller, 41 W. Va. 683, 24 S. E. Rep. 644; Whitworth v. Adams, 5 Rand. 377.
Consideration for Assignment — Measure of Recovery. —The assignee’s right of recourse upon the assignor rests upon the ground that there was a valuable consideration for the assignment. In all cases, however, the actual consideration maybe shown, and this constitutes the measure of-recovery by the assignee against the assignor. Welsh v. Ebersole, 75 Va. 651; Mackie v. Davis, 2 Wash. 219; Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 878.
Where there is no proof of the consideration for an assignment, the measure of damages recoverable on recourse against the assignor is the value of the thing assigned. Barley v. Layman, 79 Va. 518.
Extent of Assignor’s Liability. — “As to the extent of the assignor’s liability, I think it can only reach the sum actually received, in case the obligor is able to prove it. If he cannot do this, it is sufficient to be presumed that he received an equal sum with that due on the bond. If incautiously, the consideration actually received be not stated in the assignment, and it cannot otherwise be proved, a court of equity is open to the assignor, and he may there seek a discovery of that fact.” Per Carrington, J., in Mackie v. Davis, 2 Wash. 231.
An assignment of a chose as collateral security for a debt will enable the assignee to recover from the debtor the whole liability under it, though, as between the assignor and assignee, part of it may belong, after recovery, to the assignor. Bentley v. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584.
Consideration Most Be Alleged. — Where the plaintiff is only entitled to recover from a defendant the consideration received by him from his immediate assignee, then it is necessary for him to allege in his complaint the consideration for the assignment, otherwise the complaint is to be rejected as insufficient. Goff v. Miller, 41 W. Va. 683, 24 S. E. Rep. 643; Hall v. Smith, 3 Munf. 550.
Presumption of Law — Note as Evidence. — in a proceeding by the assignee against an assignor to recover on the contract implied by the assignment, the note is a necessary piece of evidence in support of the proceeding in order to prove the assignment, and to enable the court to fix the measure of the plaintiff’s recovery, for, in the absence of proof to the contrary, the law presumes that the assignor received for the note a sum equal to that specified in it. The statement of the fact of such inspection in the entry of the judgment, however, is wholly unnecessary, but the expression of it does not render the judgment reversible, nor show that the judgment was rendered on the note and not on the contract implied from the assignment. Long v. Pence, 93 Va. 584, 25 S. E. Rep. 593.
c. Priority or Assignments.
Priority of Parties Depends on Order of Assignment. —His well settled that the assignees of choses in action partake of the lien attached thereto in the order of their assignment, and not according to the dates of maturity of such choses. Turk v. Skiles. 45 W. Va. 82, 30 S. E. Rep. 234; Gordon v. Fitzhugh, 27 Gratt. 835. and note-, Taylor v. Spindle, 2 Gratt. 44; Gregg v. Sloan, 76 Va. 497; Gwathmeys v. Ragland, 1 Rand. 466.
Where all the creditors and purchasers of the assignor stand on the same footing in point of merit, and can claim no preference over each other on that ground, it naturally follows in such case that he who is first in time shall be first in priority. Bank v. Gettinger, 3 W. Va. 317; Tingle v. Fisher, 20 W. Va. 510; Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 881; Schofield v. Cox, 8 Gratt. 533.
*210 Bonds secured by the vendor’s lien, and assigned at different times to different persons, are to be satisfied out of the proceeds of the land, upon which they are secured, in the order of their assignment. Paxton v. Rich, 85 Va. 385, 7 S. E. Rep. 531.
An assignment of a legacy takes effect from its date, and the assignee is entitled to priority of satisfaction, as against creditors who have attached the legacy in the hands of the executors subsequent to the date of the assignment, although it is not shown that the assignment had been delivered to the assignee prior to the service of the process of foreign attachment. Thompson v. Graves, 1 Pat. & H. 101; Anderson v. De Soer, 6 Gratt. 370.
Set-Off —In accordance with the view that the date of assignment of bonds determines the question of priority it has been held, that the purchaser who pays off a prior lien on land bought by him, in order to protect his own title, may set off the same against his own purchase money bonds in the hands of several assignees in the inverse order of their assignments (preferring such assignments as are for value to such as are not), and if some of the bonds are assigned, and some are not, the unassigned bonds would be liable to the right of set-off before the assigned bonds, though the former were payable before the latter. Armentrout v. Gibbons, 30 Gratt. 645; 2 Barton’s Ch. Pr. (2d Ed.) 1141.
4. RIGHT TO SUE.
a. AT LAW.
Assignee May Sue in Name of Assignor. — It is well settled, that when á chose in action, such as a bond, note or accepted order, on a third person is transferred and delivered to a creditor, as collateral security for a debt, it is the right of the debtor to sue upon such chose in action at law, and if necessary to use the name of the legal owner of such chose in action. He must use reasonable care and diligence to make it available, and if his negligence, laches, omission or wrongful act causes loss on such chose in action, the creditor must bear the loss. Whitteker v. Gas Co., 16 W. Va. 721; Stebbins v. Bruce, 80 Va. 389; Tyler v. Ricamore, 87 Va. 466, 12 S. E. Rep. 799.
A stranger that has acquired an equitable right to the benefit of an execution by an assignment, or to the property upon which it is levied, may, in most cases, by virtue of such equitable right, sue out and conduct the process, or object to its validity or regularity ; but he cannot do so by proceedings in the case, in his own name, but must do it in the name of a legal party to the process. Wallop v. Scarburgh, 5 Gratt. 1.
Assignee Must Sue in His Own Name. — The legal title to a nonnegotiable instrument does not pass by assignment, but the equitable owner by assignment may sue in his own name under the statute. Code of W. Va., ch. 99, sec. 14; Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 880; Garland v. Richeson, 4 Rand. 266; Bentley v. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584; Tyler v. Ricamore, 87 Va. 466, 12 S. E. Rep. 799.
Assignee of a Draft. — The assignee of a note or draft does not acquire the legal title to the debt, but an equitable right, which he may assert at law in his own name by virtue of the statute, or in that of the original payee for his benefit; and it is not necessary, that the record should show, that the suit is for the benefit of the assignee. Clarke v. Hogeman, 13 W. Va. 728; Brown v. Dickenson, 27 Gratt. 690, opinion of Staples, J.
Right of Remote Assignee to Sue at Law. — Under the provisions of sec. 2861 of the Va. Code, a remote assignee has the benefit of the promise implied by law from an assignor to his immediate assignee, i. e., that if he fails, by due diligence, to recover from the maker or obligor, that the assignor will repay the consideration he has received for the chose in action assigned, and gives to the remote assignee, as well as to the immediate assignee, the right to recover upon such implied promise. In other words, the right which he previously had in equity the statute gives to him at law. See Code of W. Va., ch. 99, sec. 13; Long v. Pence, 93 Va. 584, 25 S. E. Rep. 593. See Drane v. Scholfield, 6 Leigh 386.
A statute authorizing the last assignee to maintain an action at law against a remote assignor does not preclude such assignee from maintaining the action in the name of his assignor for his own benefit. Dunn v. Price, 11 Leigh 203.
The last assignee of a promissory note cannot maintain an action against a remote endorser; there being neither priority nor consideration between them. Dunlop v. Harris, 5 Call 16; Hooe v. Wilson, 5 Call 61.
Assignee Can Sue Only When Assignor Could. — It is important to observe that under the statute giving the assignee the right to maintain in his own name any action which the assignor might have maintained, the assignee cannot maintain the action except where it might have been maintained by his assignor. Thus, where there are two firms with a common member, and one of the firms is indebted to the other, if the creditor firm assign its claim to a third person, such third person cannot maintain an action against the debtor firm, at law, because his assignor could not have maintained it — it being a well-settled rule that one firm cannot sue another at law, where there is a common member, since such common member would be both plaintiff and defendant — an anomaly which the courts of law will not sanction. Va. Code, sec. 2860; Aylett v. Walker, 92 Va. 540, 24 S. E. Rep. 226.
Need Not Allege for Whose Benefit Suit Brought.— Though in the declaration and summons it is advisable to declare that the assignor sues for the use of the assignee, omission to do so is immaterial, as the declaration of such use is no part of the pleadings. The cause is complete without it. But where it is so stated in the declaration and summons, it is notice to the debtors to prevent payment to the assignee, and judgment for costs may be given against the beneficiary. Bentley v. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 585; Clarke v. Hogeman, 13 W. Va. 728; Clarksons v. Doddridge, 14 Gratt. 42.
b. In Equity. — The assignee of a chose in action has not a right, in all oases, to come into a court of equity, upon the mere ground that he cannot sue in his own name; but it must appear that he is prevented from suing at law in the name of the assignor, or that the assignor himself would have had a right, if he had not assigned, to go into a court of equity. Moseley v. Boush, 4 Rand. 392.
In the case of Penn v. Hearon, 94 Va. 773, 27 S. E. Rep. 599, Cardwell, J., said: “In a note to the case of Kane v. Mann, 93 Va. 239, 24 S. E. Rep. 938, decided by this court, and reported in 2 Va. Law Reg. 433, the learned and lamented editor (Judge Burks) says that it has been decided by many cases, and seems a well-settled rule, that the complainant must be the party owning the beneficial equitable interest, and that he cannot sue for his benefit in the name of another who has a mere barren legal title.” See also, 3 Va. Law Reg. 745.
Suit on Promise. — If a promissory note or other *211 chose in action calling for money be assigned, and the party liable therefor promise its payment to the assignee, such assignee may sue on it at law in his own name, without statutory authority, as he has legal title thereto; whereas, without such promise, he would take only an equitable title, the legal title remaining in the assignor. Bentley v. Ins. Co., 40 W. Va. 729, 23 S. E. Rep. 584; Cleaton v. Chambliss, 6 Rand. 86.
“Courts of law also permit and protect assignments of choses in action to a certain extent. If the debtor assent to the assignment, and promises to pay the assignee, an action may be brought in the name of the assignee in his own name; but otherwise he must bring it in the name of the assignor.” Scraggs v. Hill, 37 W. Va. 706, 17 S. E. Rep. 187.
Who Could Sue upon Implied Promise. — “Prior to the statute authorizing a recovery from an assignor, an assignee had the right, upon the principles of the common law, to recover from his immediate assignor under the contract implied from the assignment, that the assignor would repay the consideration he had received for the chose in action assigned, if payment thereof, by the use of due diligence, could not be obtained from the obligor or maker. This implied promise was not considered, however, to extend at law to any other than the immediate assignee, and consequently no assignee could recover at law from a remote assignor.” Long v. Pence. 93 Va. 587, 25 S. E. Rep. 593. Riely, J., See Mackie v. Davis, 2 Wash. 219.
c. Effect, in General, of Statutes. —It has been settled by many decisions that the effect of the statute — allowing the assignee of any bond, note or writing, not negotiable, to maintain thereon in Ms own name any action which the original obligee or payee might have maintained, but that he shall allow all just discounts, not only against himself but against his assignor, before the defendant had notice of the transfer or assignment — is not to give the assignee of nonnegotiable paper a legal title, so that equities are cut off against him, but only to permit him to enforce in his own name an equitable title at law, subject to all prior equities, just as when he sued in the assignor’s name. Code Va., § 2860; Code of W. Va., ch. 99, § 14; Clarksons v. Doddridge, 14 Gratt. 44; Iaege v. Bossieux, 15 Gratt. 98; Whitteker v. Gas Co., 16 W. Va. 717; Tingle v. Eisher, 20 W. Va. 509: St. Lawrence Boom & Mfg. Co. v. Price (W. Va.), 38 S. E. Rep. 527; Tyler v. Ricamore, 87 Va. 466, 12 S. E. Rep. 799; Bentley v. Ins. Co., 40 W. Va. 729. 23 S. E. Rep. 584; Davis v. Miller, 14 Gratt. 13.
It is well settled that the only effect of the early statutes, passed in 1705 and 1730, was to so far change the common law, as to enable the assignee to sue in his own name, taking the paper subject to all the equities of the maker or obligor. Norton v. Rose, 2 Wash. 233; Mackie v. Davis. 2 Wash. 219; Caton v. Lenox, 5 Rand. 42; Garland v. Richeson, 4 Rand. 266; Feazle v. Dillard, 5 Leigh 30; Gordon v. Rixey, 76 Va. 704; Stebbins v. Bruce, 80 Va. 400.
Common Law Not Abrogated by Statute. — It is a familiar principle that, though an assignee of a chose in action may himself sue, in his own name, still suit may still be in the name of the assignor as at common law. Bentley v. Ins. Co., 40 W. Va. 729. 23 S. E. Rep. 585. See also. Garland v. Richeson, 4 Rand. 266; Clarke v. Hogeman, 13 W. Va. 718.
May Sue in Assignor’s Name or in His Own Name. - It was held, in Dunn v. Price, 11 Leigh 209, that because the act of 1807, provides that “hereafter the assignee shall be entitled to recover from any previous assignor or assignors,” it does not follow that he can no longer sue in the name of his assignor for his own benefit; he may sue either in his assign- or’s name, and for his own benefit, or in his own name under the statute. If he pursues the former course, the court of law will take notice of his equitable right, will permit the action to proceed in the name of the assignor, for his benefit, and will protect it against the interference of the assignor. The court furthermore said, that Garland v. Richeson, 4 Rand. 266, is pregnant with proof that a party may proceed under the statute or as at common law; and that the argument in that case is a fortiori in this.
It is evident that under the W. Va. statute, ch. 99, § 14, a right is merely conferred upon the debtor which he did not possess before under the common law when it provides that the assignee of any bond,, note, account, or writing, not negotiable, may maintain thereupon any action in his own name, without the addition of “assignee, which the original obligee or payee might have brought,” etc.; but the right so conferred must be regarded as merely cumulative, and does not in any manner detract from the remedy prescribed under the, common law. See Scraggs v. Hill, 37 W. Va. 706, 17 S. E. Rep. 187.
May Recover against Immediate or Remote Assignor. —Under ch. 99, sec. 15 of Code of W. Va., an assignee, by way of recourse, may recover against his immediate or any remote assignor of nonnegotiable paper. Hughes v. Frum, 41 W. Va. 445, 23 S. E. Rep. 604; Long v. Pence, 93 Va. 584, 25 S. E. Rep. 593.
Statute Applies to Nonnegotiable Paper. — The statute which declares “the assignee of anyboxxd, note or writing not negotiable, may maintain any action thereupon in his own name, which the'original obligee or payee might have brought, butshall allow all just discounts.” etc., applies only to writings not negotiable; and its only effect is to authorize the assignee of such writings to sue at law in his own name. The legal title still remains in the assignor, in whose name the suit at lawra ay be brought. But by no just construction can this statute be made to include negotiable notes whether before or after maturity, for the language of the statute expressly excludes them. Davis v. Miller, 14 Gratt. 13.
cc. Upon Equity Jurisdiction. — In 2 Va. Law Reg. 384, the editor says: “The remedy provided by sec. 2860 of the Va. Code of 1887 (see Code of W. Va., ch. 99, sec. 14, for a similar provision), for actions by assignees of nonnegotiable choses in action, in their own names, is not exclusive of the j urisdiction of equity to grant relief, save in so far as the jurisdiction is excluded by sec, 2862 (Code of W. Va., ch. 99, sec. 16, makes identically the same provision). The latter excludes equitable jurisdiction only in the case of ‘suits upon a bond, note, or writing by an assignee.’ So that equity still has jurisdiction of suits by assignees of choses iix action, other than bonds, notes or writings, though under sec. 2860, the assignee of any chose in action (whether in writing or not) may maintain an action thereon in his own name.”
Code of Va. 1873, ch. 141, sec. 19, providing that equity shall not have jurisdiction of suits on bonds, notes, etc., by the assignee or holder thereof, was not intended to affect the principle that, when the court has once rightly obtained cognizance oí the controversy and of the acts of the parties, i.ts power *212 is effectual for complete relief. Walters v. Bank, 76 Va. 12, 18.
Equity Jurisdiction Still Remains. — The pre-existing right of an assignee of a bond, to demand payment of the same in a court of equity has not been emerged or impaired by the statutory right, since given him, to sue at law in his own name, upon the assignment. The latter remedy is cumulative and additional to the former. Winn v. Bowles, 6 Munf. 25.
Where a case was within the jurisdiction of a court of equity before the statute, and there is nothing in the act expressly excluding the cognizance of that court, it is to be construed as merely cumulative, and to give a concurrent remedy to the court of law. Galt v. Calland, 7 Leigh 600, per Tucker, J.
Remedy at Law Adequate. — But it is provided by Code of Va., sec. 2862, Code of W. Va., ch. 99, sec. 16, as follows: “A court of equity shall not have jurisdiction of a suit upon a bond, note, or writing, by an assignee or holder thereof, unless it appear that the plaintiff had not an adequate remedy at law.”
5. ESTOPPEL. — An assignor, who, by his silence, assurances, or representations, causes another party to take an assignment of a bond, will be equitably estopped from saying that the representations, etc., were false, where the assignee had a right to rely, and did rely on them to his injury. Nicholas v. Austin, 82 Va. 817, 1 S. E. Rep. 132, 5 Va. Law Reg. 115.
Estoppel by Assurances of Payment. — “In cases of assignment it is settled law, that if, before the assignee takes it, he applies to the obligor, informs him of his design to buy, and receives assurances that there is no objection to the bond, and that it will bp,duly paid, the obligor cannot afterwards set up, against the assignee, the defence of payment or illegal consideration.” Per Tucker, P., in Davis v. Thomas, 5 Leigh 4.
The assignee of a bond, given for a gaming consideration, stands in no better situation than the obligee would have done; but it is otherwise both at law and in equity, if he be induced by assurances of payment from the obligor to become the purchaser of the bond. Buckner v. Smith, 1 Wash. 296; Hoomes v. Smock, 1 Wash. 389.
An endorsee, who purchases a negotiable note, without notice of any equity between the maker and endorser, is not affected by such equity; especially where, before the assignment, the maker gives assurances to the endorsee, that the note will be duly paid. Lomax v. Picot, 2 Rand. 247.
Estoppel by Promises Express or Implied. — Where a debtor expressly or impliedly promises to pay a debt, after notice of the assignment, he is estopped from setting up any defence he had against the assignor. Stebbins v. Bruce, 80 Va. 389; Feazle v. Dillard, 5 Leigh 30.
Estoppel by Silence. — But mere silence will not operate to estop a party from setting no defences. Stebbins v. Bruce, 80 Va. 389.
Gaming Consideration. — “Though, upon a bill in equity by the obligor against the obligee and his assignee, it be fully proved, by evidence unobjectionable on the part of the defendant, that the bond of the plaintiff was given for a gaming consideration, still it is clear that the obligor cannot be discharged from his .liability to the assignee, where the evidence satisfactorily shows that neither the assignee nor his agent, previous to the assignment of the bond, ha'd any knowledge of its having been executed for money won at play, and that the agent was induced to purchase it by the plaintiff’s assurances that there was no objection to its payment, and that it would be duly paid. Under such circumstances the plaintiff cannot be exonerated from his indebtedness to the innocent assignee, and the only question he can be permitted to make is what is the amount of that indebtedness. Is it the whole sum for which he is bound, or is it the sum paid by the assignee to the assignor for the assignment ?” Per Baldwin, J., and Allen, J. Pettit v. Jennings, 2 Rob. 676.
But the assignee of a bond for money won at gaming cannot recover, though the assignment was for valuable consideration, and though he had no notice of the origin of the bond, unless the obligor, before the assignment, induce him to take the bond by promising to pay him the money. Woodson v. Barrett, 2 H. & M. 80.
VI. PLEADING AND PRACTICE.
1. ALLEGATIONS OF PAYMENT — BEFORE NOTICE. — In an action upon an assigned bond the declaration must aver nonpayment by the defendant to the assignor before notice of the assignment, and a mere averment of nonpayment, without more, is insufficient, and the defect is not cured by the verdict. Green v. Dulany, 2 Munf. 518.
The assignor and assignee of a bond being made defendants to a bill exhibited by the obligor, for an injunction and for general relief, he alleging that he paid the money to the assignor without notice of the assignment; of that allegation he afterwards disproved, whereupon the injunction is dissolved, and the bill dismissed as to the assignee : the cause ought yet to be retained, and further proceeded in, to give the complainant relief against the assignor. Ruffners v. Barrett, 6 Munf. 207.
In debt on bond, by the administrator of the assignee of the obligee against the administrator of the obligor, the declaration should aver nonpayment by the defendant or his intestate to the assignor, before notice of the assignment, or to the plaintiff’s intestate in his lifetime, or to the plaintiff after his death. Mitchell v. Thompson, 2 P. & H. 424.
Plea of Payment. — In debt on an assigned bond, the assignee being plaintiff, if the defendant pleads that he has paid the debt to the plaintiff (without pleading payment to the assignor before notice of the assignment) it is not allowable to give in evidence any set-off against, or payment to the assignor. Hatcher v. Cabell, 6 Rand. 252.
Payment to Whom. — In debt on a bond, in behalf of the survivor of two joint assignees, a declaration, charging that the defendant had not paid the debt to the obligee, or to the plaintiff, without averring, also, that he did not pay it to the other assignee in his lifetime, is bad on general demurrer. Nicholson v. Dixon, 5 Munf. 198.
. In an action of debt upon an assigned bond, the declaration ought to charge a failure to pay the money to the obligee, and to each of the assignees, as well as to the plaintiff; and if it only charges a failure to pay the plaintiff, it is too defective to maintain the action, which defect will not be cured by the verdict. Braxton v. Lipscomb, 2 Munf. 282. See also, Norvell v. Hudgins, 4 Munf. 496.
How Question of Payment Ascertained. — Where the debtor is sued by the assignee, it is of course important to him to be satisfied that the plaintiff is in fact the assignee, so that the defendant may be protected against the assignor, on payment of the judgment to the assignee. If the defendant desires to question the validity of the assignment, he may *213 have a rule issued against the assignor to appear in the suit and avow or disavow the assignment. Clarksons v. Doddridge. 14 Gratt. 42; Triplett v. Goff, 83 Va. 784, 3 S. E. Rep. 525.
2. PROOF OF ASSIGNMENT — A bill is filed by the assignees, and the answer calls for proof of the assignment which is alleged in the bill. Held, it is error to decree for the plaintiffs, without such proof. Tennent v. Pattons, 6 Leigh 196; Corbin v. Emmerson. 10 Leigh 663; Lynchburg Iron Co. v. Tayloe, 79 Va. 675.
But in a bill by an assignee against the obligor and assignor, where the assignment is not questioned by the assignor, no necessity exists for proving it as against the obligor. Mayor v. Carrington, 19 Gratt. 74.
military Certificate. — The assignment of a military certificate to the plaintiff, ought to be proved, for the property in these papers will not pass by delivery, without assignment. The bare possession is not enough. Johnson v. Pendleton, 5 Call 128; Wilson v. Rucker, 1 Call 500, and Wythe 296, approved and followed.
Proof of Assignment under Statute. — By statute, where the declaration, bill, or other pleading alleges the assignment, proof thereof is dispensed with, unless with the plea, putting it in issue, there be filed an affidavit denying the assignment. Va. Code 1887, ch. 159, sec. 3279; Code of W. Va., ch. 125, sec. 40.
An allegation that the note was “sold and transferred,” is not sufficient to dispense with proof of the fact, not being within the statute, which has no application to a transfer of a note by mere delivery, but only to endorsements or assignments in writing. Clason v. Parrish, 93 Va. 24, 24 S. E. Rep. 471, 2 Va. Law Reg. 188, 191, and note; Phaup v. Stratton, 9 Gratt. 615. See also, Robinson v. Dix, 18 W. Va. 528; Maxwell v. Burbridge, 44 W. Va. 248, 28 S. E. Rep. 702.
Bond Offered in Discount —A receipt or assignment of a bond, offered in discount, must be proved at the trial. Without this the avowant could have no pretence to introduce it. Turberville v. Self, 4 Call 580.
Variance —Declaration on a bond was given to A, and by him assigned to the plaintiff. The bond produced in evidence had had an assignment indorsed to B which was stricken out, except the signature of the obligee, above which was indorsed the assignment to the plaintiff. The court held that there was no variance between the declaration and the bond. Drummond v. Crutcher, 2 Wash. 218.
3. STATUTE OF LIMITATIONS. — One of two assignees, claiming the same judgment, cannot plead the statute of limitations as against the other. Clarke v. Hogeman. 13 W. Va. 718.
Time of Accrual of Action. — Upon a plea by the assignor that the action against him did not accrue within five years, it is found that though the debt originally due from the obligor has been discharged by payments to and set-offs against the assignor, yet the assignee did not know, until after judgment in his suit against the obligor, that nothing was due; and it is also found that five years have not elapsed since the judgment. Held, that as part of the debt was discharged by the set-off, it was only the judgment which established the set-off as a payment, and until the judgmentwasrendered, the action did not accrue against the assignor. Scates v. Wilson, 9 Leigh 473.
4. ACTION OF ASSUMPSIT — “In an action by the assignee against the assignor, the right of recovery is founded in every case npon the implied contract created by the assignment, and the remedy for the enforcement of the right is the action of assumpsit.” Long v. Ponce, 93 Va. 588. 25 S. E. Rep. 593; Caton v. Lenox, 5 Rand. 31; Thomas v. Linn, 40 W. Va. 122, 20 S. E. Rep. 880.
Reasons Why Assumpsit Lies. — An assignee may recover against an assignor of nonnegotiable paper, on the common count for money had and received in indebitatus assumpsit. “Recovery can be had based on the assignment of a chose in action turning out insolvent, and this is true whether there has been an express or implied undertaking to stand good for it in case of a failure to collect, for the law says that it shall be refunded on the ground that there has been a failure of consideration, and in legal contemplation the money is received for the use of the party who paid it.” Hughes v. Frum, 41 W. Va. 445, 23 S. E. Rep. 605. Nichols v. Porter, 2 W. Va. 13, so far as it relates to this feature is overruled by the principal case. Drane v. Scholüeld, 6 Leigh 395, opinion of Tucker, J.; McWilliams v. Smith, 1 Call 125, opinion of Roane, J. The latter case is pointedly decisive of the question logically, the court saying: “This note with its assignments, was certainly proper evidence on the general count for money had and received.” See also, Mackie v. Davis, 2 Wash. 219.
When the Action Will Lie. — The assignee of a promissory note must first sue the maker, before he can resort to the assignor, and until he sues the maker, he cannot recover against the assignor upon the counts in indebitatus assumpsit for money had and received, or for money paid, laid out, and advanced, which will lie against the assignor of a bond, and is the proper action, when the proper steps have been taken. Lee v. Love, 1 Call 497; Mackie v. Davis, 2 Wash. 229, 230, opinion of Roane, J.
Where an assignor endorses his name in blank on a bond for the purpose of enabling' the assignee to obtain credit thereon, and buys goods on the faith of his endorsement, he will be liable to the holder thereof, in an action of assumpsit, either as assignor or guarantor of the bonds, where the maker is insolvent. Hopkins v. Richardson, 9 Gratt. 485. See Welsh v. Ebersole, 75 Va. 659, 660, in which Staples, J., comments upon the above case.
5. PARTIES-GENERAL RULE — The general rule is, that where it is necessary to adjudicate the rights of the assignee, the assignor, or if he be dead, his personal representative, must be made a party to the cause. Vance v. Evans, 11 W. Va. 342, 382; Corbin v. Emmerson, 10 Leigh 663; Lynchburg Iron Co. v. Tayloe, 79 Va. 675.
Personal Representative Necessary Party. The case of Owens v. Riely’s Executors, 1 Va. Dec. 136 decided at Staunton, Va., at the September term, 1878, but not reported, is stated as follows, in 1 Barton’s Ch. Pr. (2d Bid.) p. 172: “There was a contention between two creditors who had presented their claims for audit before a master commissioner, who was acting under a decree rendered in a general creditors’ suit, and in which neither of them was named as a party. The fund was not sufficient to pay all the debts, and the creditor whose debt was not disputed excepted to, the commissioner’s report auditing the other debt, because that creditor claimed as assignee of another, and yet produced no evidence of the assignment except the mere possession of an unendorsed bond, which was not payable to bearer. The counsel for *214 both parties agreed in argument that, owing to the difficulty of making the personal representatives of the alleg*ed assignor parties to the suit, the case could properly be tried without their presence. This, however, the court of appeals refused to do, but reversed the cause, and sent it back to the circuit court, with directions that the representatives of the alleged assignor should be made parties to the suit, or else be summoned before the master commissioner.”
Assignor of Hortgage. — The assignee of a mortgage may maintain a suit to foreclose, without making his assignor a party, if the legal title has been conveyed to him. Newman v. Chapman, 2 Rand. 93.
Unknown Assignees. — In a bill to set aside a deed as to one and his assigns, and it does not appear that there are any assigns, it is unnecessary to make them parties. Smith v. Cornelius, 41 W. Va. 59, 23 S. E. Rep. 603.
An assignee of an interest in a portion of the purchase money, is the proper party to a bill of specific performance. Davis v. Henry, 4 W. Va. 571.
Parties to a Petition. — Where one files a petition in a pending cause to assert a claim as assignee to a debt reported therein, the assignor must be made a party to the petition and summoned to answer. Daily v. Warren, 80 Va. 517.
Assignment of Whole Interest of Assignor. — If an assignment purports to transfer the whole interest of the assignor, and there is nothing in the pleadings or proof to induce the belief, that it did not really do so, the assignor is not a necessary party to the suit on the claim assigned. Scott v. Ludington, 14 W. Va. 393; Omohundro v. Henson, 26 Gratt. 511; Vance v. Evans, 11 W. Va. 342; Tatum v. Ballard, 94 Va. 375, 26 S. E. Rep. 871; Corbin v. Emmerson, 10 Leigh 663, distinguished in James River & K. Co. v. Littlejohn, 18 Gratt. 53, on the ground that the question of the assignment was not before the court. Daily v. Warren, 80 Va. 517; James v. Burbridge, 33 W. Va. 272, 10 S. E. Rep. 397; Lynchburg Iron Co. v. Tayloe, 79 Va. 674, opinion of Lacy, J.
The assignor of a chose in action is not a necessary party to a bill by the assignee to enforce the chose in action against a third party, if the assignment, pleadings, and proof tend to induce the belief that the assignor’s whole interest was transferred, and the validity of the assignment was not denied. James River & K. Co. v. Littlejohn, 18 Gratt. 53, 82.
Assignment Absolute and Unconditional —An assignment being in writing, unconditional and absolute, and the extent and validity of it being neither doubted nor denied, the assignor is not a necessary party. Findley v. Smith, 42 W. Va. 299, 26 S. E. Rep. 371; Chapman v. Railroad Co., 18 W. Va. 184; James v. Burbridge, 33 W. Va. 272, 10 S. E. Rep. 396.
Note Endorsed for Collection. — It was held, in Lynchburg Iron Co. v. Tayloe, 79 Va. 676, that as the note sued on by the alleged assignee in this cause not having been assigned to him by the alleged assignor, but endorsed only for collection, it is necessary to make the said alleged assignor a party to any proceedings having for their object the disposition of the said note.
The assignor and assignee of a judgment may unite as coplaintiffs in a suit in equity to recover a debt. Neely v. Jones, 16 W. Va. 627, 645.
It was held, in List v. Pumphrey, 3 W. Va. 672, that where after a cause is revived, the said administrator de bonis non assigns the judgment which is the subject-matter of the suit, to an assignee, and the suit proceeds in the name of the new administrator without the assignee being made a party, still the cause might so proceed until final judgment.
Equity Deals Only with the Real Parties. — It is a well-settled rule that an assignor of a chose in action, though secured by a vendor’s lien reserved on real estate, cannot sue in equity for the benefit of his assignee to collect the debt. The reason for the rule is that equity deals only with the real parties in interest, and if they are not before the court no proper decree can be made in the cause. But where the beneficial owner has been made a party to the suit by the cross bill of the respondents, and has filed its answer thereto, a demurrer to the original bill should not be sustained. Hurt v. Miller, 95 Va. 32, 27 S. E. Rep. 831. See also, Penn v. Hearon, 94 Va. 773, 27 S. E. Rep. 599.
VII. EVIDENCE.
1. SCOPE OF SECTION. — Only such matters of evidence will be treated under this section, as do not properly fall under the other general heads.
2. EFFECT OF DEATH OF ONE PARTY. — The evidence of an assignor of choses in action, which contains declarations and conversations with a deceased party, as to the justness of such claims, is incompetent. Code of W. Va. 1868, p. 619, sec. 23; Middleton v. White, 5 W. Va. 572. See also, Ginter v. Breeden, 90 Va. 565, 19 S. E. Rep. 656; Mason v. Wood, 27 Gratt. 783.
One Not a Party to the Bond. — But one not a party to a bond, but who has agreed with the obligor to pay it, and has received from him money for that purpose, is a competent witness to prove payment, though the obligee is dead. Wager v. Barbour, 84 Va. 419, 4 S. E. Rep. 842.
Release Will Not Make Assignor Competent. — When an assignor and assignee of a chose in action are both parties to a suit brought to recover money due upon such chose in action, and the debtor is not living, the assignor is incompetent to testify as a witness in such suit in favor of his assignee. Even though a release is made by the assignee to the assignor, from all and every liability to recourse or otherwise, as assignor of the chose in action, this does not make the assignor a competent witness to testify in favor of his assignee. White v. Heavner, 7 W. Va. 324.
3. POSSESSION AS EVIDENCE OF AN ASSIGNMENT.
Mere Possession Not Evidence of Title. — But where there is no written assignment, the mere possession of the instrument would not be sufficient evidence of title to authorize the debtor to pay to the holder, the principle being that the mere possession of a common-law instrument, in the absence of other circumstances, is not sufficient evidence of title. Brown v. Taylor, 32 Gratt. 135, 5 Va. Law J. 1; Tate v. Tate, 85 Va. 205, 7 S. E. Rep. 352.
It is said, in 1 Barton’s Ch. Pr. (2d Ed.) p. 560, that while it is true that the mere possession of a note or bond is not prima facie proof that it was assigned, yet the delivery of the instrument by which the debt is secured will amount to an equitable assignment of it if there be proof that it was so intended, at least if there be a valuable consideration therefor. Mr. Barton seriously questions the proposition laid down in Bell v. Moon, 79 Va. 341, that possession of bonds and notes makes a prima facie case of ownership. See also, 10 Va. Law J. 450; Morrison v. Grubb, 23 Gratt. 342.
Possession by Personal Representative —Where the assignment of a bond is made to one who afterwards *215 becomes personal representative, possession of the bond ' and production is no evidence of delivery. Lewis v. Mason, 84 Va. 731, 10 S. E. Rep. 529.
Effect of Lapse of Time — Where time has barred an action for deceit against the obligees of a bond, the assignee is not therefore an incompetent witness for the holder of the bond against the obligors. Fant v. Fant, 17 Gratt. 11.
Remote Assignor Competent Witness, — Where a note, not negotiable, is endorsed by several persons in succession, the last assignee could only sue the maker and his immediate assignor, and not a remote assignor, before the Act of Assembly of 1807, hence, before that act, a remote assignor, might have been a competent witness, to prove that the immediate assignor was discharged, in a suit between him and the last assignee. Caton v. Lenox, 5 Rand. 31.
Guarantee Uncalled for — Assignee Competent. — The assignee of a bond transfers it for value, without assignment, but undertakes verbally to guarantee it, if the transferee calls on him to do so, to enable him to dispose of it. The transferee disposes of the bonds without calling for the guaranty. The assignee is no longer liable on the promise to guarantee, and is therefore not an incompetent witness for the holder against the obligors. Fant v. Fant, 17 Gratt. 11.
Proof of Handwriting of Prior Assignors. — 3n a suit against the assignor of a bond, the handwriting of the assignors prior to his own, need not be proved upon the trial of the cause, because this action is founded principally on the priority that exists between the assignor and assignee, hence, it will be seen very readily that mesne or intermediate endorsements need not be proved. McWilliams v. Smith, 1 Call 123; Mackie v. Davis, 2 Wash. 219.
Answer oí One Assignor as Evidence against Other. —We find it laid down in the books, in the strongest terms, that the answer of one defendant is not evidence against his codefendant, and there is no authority which makes the answer of a vendor or assignor an exception from the general rule, even though the bond assigned be alleged to have been given on a gaining consideration, and this fact cannot be established by the answer of the codefendant (assignor) against the other defendant who is the assignee. Petit v. Jennings, 2 Rob. 676. See, in accord, Hoomes v. Smock, 1 Wash. 389; Dade v. Madison, 5 Leigh 401.
Privileged Communications. — Communications by assignor to attorney of assignee are not privileged when the attorney was acting for his client. Hall v. Rixey, 84 Va. 790, 6 S. E. Rep. 215.
VIII. RECORDATION OP ASSIGNMENTS.
Assignments of Choses Need Not Be Recorded. — Assignments of choses in action, whether general or special, are not required tobe recorded, and, hence, such recordation, if made, would not constitute constructive notice to third persons. Gordon v. Rixey, 76 Va. 701; Daily v. Warren, 80 Va. 512; Gregg v. Sloan, 76 Va. 500; Bickle v. Chrisman, 76 Va. 678; Ginter v. Breeden, 90 Va. 570, 19 S. E. Rep. 656; Kirkland v. Brune, 31 Gratt. 126, and note; Fleshman v. Hoylman, 27 W. Va. 728; Tingle v. Fisher, 20 W. Va. 497, 511; Renick v. Ludington, 20 W. Va. 511; Bank v. Gettinger, 3 W. Va. 317; Turk v. Skiles, 45 W. Va. 82, 30 S. E. Rep. 236.
The record of a deed of trust, by which bonds are assigned, does not constitute notice to the obligor of the assignment. Terry v. Wooding, 2 P. & H. 178.
Where a lien creditor, who as to a prior unrecorded deed, is a subsequent purchaser for value and without notice, assigns his claim to an assignee, who has notice of the deed, the assignee is as fully protected as the assignor had been. Cox v. Wayt, 26 W. Va. 807.
Meaning of “Goods and Chattels” in Recording Acts. —It seems to be perfectly well settled that the words “goods and chattels,” contained in the Virginia and West Virginia recording acts, do not apply to choses in action, but only to visible, tangible, movable property. Code of W. Va., ch. 74, sec. 5; Va. Code 1887, sec. 2414; First Nat. Bank of Richmond v. Holland, June 20, 1901, 7 Va. Law Reg. 204; Kirkland v. Brune, 31 Gratt. 126; Turk v. Skiles. 45 W. Va. 82, 30 S. E. Rep. 236; Tingle v. Fisher, 20 W. Va. 498; Fleshman v. Hoylman, 27 W. Va. 728.